MICAH DYER, JR., & wife *vs.* SAMUEL A. SHURTLEFF & others.

A solicitor or agent for a mortgagee selling under a simple power of sale in the common form cannot be the purchaser of the property either for himself or for another.

A notice of sale under a power of sale in a mortgage need not name those who have acquired an interest in the estate from the mortgagor since the mortgagee's title accrued.

In the absence of agreement to the contrary, one interested in land sold under a mortgage with a power of sale, is entitled to only the usual published notice.

BILL IN EQUITY, filed February 23, 1872, to redeem land in Boston from a mortgage.

At the hearing, before *Ames,* J., it appeared that January 18, 1868, the Boston Silk and Woollen Mills mortgaged their land, by a deed containing a power of sale, to the defendant Shurtleff, to secure the payment of four notes of $5000 each. The payment of each of these notes was also guaranteed by various persons, one Francis being the guarantor of one of them. August 14, 1868, the Boston Silk and Woollen Mills conveyed their estate in the premises to the Bigelow Mills. January 15, 1869, the Bigelow Mills mortgaged the premises to one Holbrook, who subsequently assigned the mortgage to the female plaintiff. After the making of this last mortgage the Bigelow Mills conveyed their estate in the premises to the plaintiff Dyer, and the defendant Wetherell. In 1871 about $3000 was paid to Shurtleff in reduction of the principal of the notes held by him. January 26, 1872, six months' interest upon these notes being over due and unpaid, Shurtleff's son, as his agent, made an entry upon

the land, and the premises were, according to the terms of the power of sale, afterwards sold at public auction.

The arrangements for the sale were made by the defendant Rand, who acted throughout and down to the time of the bidding upon the property as the attorney and agent of Shurtleff. At the sale Rand bid off the premises for $18,000 in his own name, but acting at the request of Francis, and as his agent, to protect him upon his guarantee of the note of the Boston Silk and Woollen Mills to Shurtleff. It was in evidence that the land was worth much more than $18,000. So much of the remainder of the evidence as is material is stated in the opinion.

The judge made the following order: " It is ordered and decreed by the court here, that the said Micah Dyer, Jr., and H. W. Wetherell be permitted to redeem said mortgage upon the payment to the said S. A. Shurtleff of the amount due on said mortgage, with interest thereon, and the costs, to be taxed by the clerk, within twenty days. And in case the said M. Dyer, Jr., and H. W. Wetherell should not pay the said amount as aforesaid, then it is ordered and decreed that the said Julia K. Dyer, upon the payment of the amount due under said mortgage, with interest thereon, and the costs, to be taxed by the clerk, within thirty days thereafter, shall have assigned to her the mortgage aforesaid by the said respondent Shurtleff ; and the said mortgage, when so assigned, shall be held by her as a charge upon the estate." From this order the defendants appealed to the full court.

*C. A. Welch,* for the defendants Shurtleff and Rand.

*A. A. Ranney & W. E. L. Dillaway,* for the plaintiffs.

ENDICOTT, J. The principal question in this case is, whether the solicitor or agent for a mortgagee, selling under a power of sale, can be the purchaser of the property for himself or another. It appears by the answers and testimony that Rand, one of the defendants, acted for Shurtleff, another defendant, and was his counsel in the matter of the sale ; that he prepared the published notice, employed the auctioneer, made all the arrangements, and attended the sale. It also appears that he there pointed out the boundaries of the estate ; was prepared with the figures to show

how much was due as principal, interest, and expenses under the mortgage, and was prepared to stop the sale if any one should appear to redeem. The auctioneer testified that he received all his instructions from Rand and no one else, and never had any conversation with Shurtleff as to the sale or the manner of conducting it. The son of the defendant Shurtleff, who had a general power of attorney from his father, testified that Rand was counsel through the whole transaction. There can be no question that the sale took place under Rand's direction, and that he acted with full powers, and exercised all the control that his principal could have exercised. Previously to the sale, Francis, who was guarantor on one of the notes held by Shurtleff and secured by the mortgage, called upon Rand, and instructed him to see that the property brought enough to protect his interest and cover the notes ; and Rand agreed so to do, and to bid for the property for Francis a sum sufficient for that purpose. Francis was present at the sale, but took no part himself. The only bid made was by Rand, who bid, on behalf of Francis, $18,000, a sum sufficient to cover the notes, interest, and expenses. Rand then signed the memorandum of sale, as the purchaser, not as the agent of Francis, and it was confirmed by the son of the defendant Shurtleff, who was present, but who took no other part at the sale. It also appeared that after the sale Rand declined to allow the plaintiffs to redeem, unless an advance was paid to Francis.

By reference to the mortgage, under which this sale took place, it appears that the power of sale is in the common form, and does not contain any power to the mortgagee to purchase himself, as in some of the later forms.

Shurtleff, therefore, could not directly or indirectly himself be the purchaser, and thereby hold the property against the mortgagor or any parties claiming an interest in the estate under the mortgagor. *Litchfield* v. *Cudworth*, 15 Pick. 23, 30. 2 Sugden on Vend. & Pur. (8th Am. ed.) 688, 689. He is, therefore, a trustee for sale, " rendering the overplus of the purchase money, if there be any," to the mortgagor or his assigns. In this respect his position is the same as any trustee or person holding a fiduciary or confidential relation to other parties, hav-

ing an interest in the property. The same disability attaches
to his solicitor or agent, who, in his behalf duly authorized,
conducts the sale, and exercises the authority and control which
Shurtleff himself could have exercised if present.   He cannot
have any larger powers than his principal, and cannot purchase
for himself.   Lord Eldon, in holding that a solicitor to a commis-
sion in bankruptcy could not purchase at a sale of the bankrupt's
property, said: "Perhaps he is upon principle the person of all
others disabled." *Ex parte Bennett,* 10 Ves. 381, 385.   And
in another case of sale by the assignees under a commission of
bankruptcy the same judge said: "As to the solicitor, if there
is any utility in applying the principle against the assignee, the
application as against the solicitor is more loudly called for."
*Ex parte James,* 8 Ves. 337, 346.   The solicitor, Rand, stands in
precisely the same position in regard to the purchase of this prop-
erty as his principal.   It does not come within that class of cases
where a solicitor may purchase for his client or for another, on
the condition of entire good faith, and that all the facts are known
by all the parties in interest; *Hesse* v. *Briant,* 6 De G., M. &
G. 623 ; but within that other class, where other parties having
interests, as *cestuis que trust,* the solicitor must divest himself of
his character of *quasi* trustee, or obtain the consent of the *cestuis
que trust,* or parties in interest, by a bargain or contract for lib-
erty to buy.   *Coles* v. *Trecothick,* 9 Ves. 234, 247.   *Ex parte
James, supra.   Carter* v. *Palmer,* 8 Cl. & F. 657, 706.

It is clear, therefore, that Rand could not purchase for himself,
and as the memorandum of sale is signed by him personally, and
as no other person but Rand can have any right to enforce the
sale, if legal, we might well stop here, except for the fact that
it now appears that he acted for Francis with the knowledge and
acquiescence of the younger Shurtleff.

It was strongly urged in the argument that this was a mere
ministerial act; that it was only to protect the interest of Francis ;
that it was in perfect good faith on the part of Francis and Rand.
The court has no reason to doubt the good faith of either, or to
question the entire honesty of both; but the facts of this case
bring it clearly within the rule that agents to sell, holding a

fiduciary relation to others, cannot be purchasers in any form or for any person, and that in such case the characters of buyer and seller are so incompatible that they cannot be vested in the same person, although all parties act in entire good faith.

The authority that Rand received from Francis was a limited authority, merely to protect his interest, and perhaps that of the other guarantors on the notes, by bidding a sum sufficient to cover notes, interest, and expenses, which amounted to about $18,000. There was no authority to buy or to bid beyond that sum. There was no authority to bid up to the value of the property, which Francis states to be, in his judgment, $24,000. Rand obeyed these instructions, and in the interest of Francis bought the property for $18,000. In this he did all his duty, as agent of Francis, and protected his interest. But the protection of his interest was not in all respects compatible or identical with the protection of the mortgagor and the other parties in interest. Shurtleff, the mortgagee, was bound while securing his own interest to protect as far as he could the mortgagor; to obtain the best price he could; to get the full value of the estate and secure an overplus if possible. Rand was his man of business in the transaction, his agent at the sale; in one sense he was the vendor, having the same duties and bound by the same obligations to secure the best possible results, regardless of the interest of all other persons, except the mortagor and mortgagee. He could not, therefore, act for a third party having a different interest, in no wise identical with the interest of those for whom he was first bound to act. By reason of his relations to the mortgagee he was bound to get the highest price, the full value if possible; by virtue of the agency he undertook for Francis, he was bound to bid only the sum necessary to protect Francis's interest, and to obtain the property for him, if such sum would obtain it. The characters assumed are utterly inconsistent, and the policy of the law does not allow them to be united in the same person. The sale, therefore, may be avoided by the plaintiffs, and on this ground they are entitled to redeem.

Two questions remain to be considered, whether the published notice was sufficient, and whether the plaintiffs were entitled to receive express notice.

We think the notice was sufficient. The only defect alleged was that it did not contain or mention the name of the second mortgagee, or the owners of the equity of redemption. In the notice in *Roche* v. *Farnsworth*, 106 Mass. 509, there was a similar omission, and it was alluded to in the opinion as one of the defects in the notice, but it was not necessary to the decision, and the case does not rest upon it. The fatal defect there was the omission of the name of the present owner, the assignee of the mortgage, which was not stated either in the body of the notice or the signature; but in this case the notice describes the mortgage as made to Shurtleff, and is signed by him as mortgagee. It is no part of the duty of the mortgagee to state in his notice the names of those who have acquired an interest in the estate from the mortgagor since the mortgagee's title accrued.

In regard to the express notice in case of sale, which the plaintiffs say that they were entitled to receive, upon the evidence we do not find that any agreement was made by the defendant to give such notice. The plaintiffs refused to pay the interest, they were told that the defendant would put the papers in the hands of his solicitor for foreclosure, and they were entitled to only the usual published notice.

As all the proceedings were regular and proper to the time of the sale, the defendant is entitled to his reasonable expenses of the sale. The decree is therefore to be modified in this respect, but affirmed in all other particulars. As the decree is thus changed, no costs are allowed to either party in the appeal.

*Decree accordingly.*