### WILLIAM K. PORTER *vs.* FANNIE E. P. PORTER & another.

Berkshire. September 23, 1920. — November 22, 1920.

Present: BRALEY, DE COURCY, CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Equity Pleading and Practice,* Exceptions, Finding by judge. *Mortgage,* Of real estate: foreclosure by sale. *Fraud. Evidence,* Inference, Presumptions and burden of proof, Letter.

Upon exceptions to rulings of a judge who heard a suit in equity upon the pleadings and a report of a master without a report of the evidence, findings of fact cannot be reviewed.

A master, to whom was referred a suit in equity by one of three sons of a woman who had died intestate seised of certain real estate, against the wife of the plaintiff's father by a second marriage and a bank to which his mother had mortgaged the real estate to secure the payment of a note of $3,500, to have a sale and conveyance of the property to the second wife of the father in foreclosure under a power of sale in the mortgage set aside as having been procured by fraud, found that previous to the sale the father had held the property as a tenant for life; that the mortgagee had complied literally with the requirements of the mortgage as to publication and notice; that on April 14, 1911, the treasurer of the mortgagee had written a letter to one of the brothers of the plaintiff who lived in New Orleans in the State of Louisiana, which was replied to on May 12 by a letter seeking advice as to the desirableness of the brothers purchasing

the property at a foreclosure sale; that the treasurer had replied by a letter on May 25, giving details requested and stating a willingness of the bank to have the mortgage continue, "providing the interest was paid promptly, but we cannot and will not allow it to run along in the shape in which it has been running;" that the first publication of notice of the sale was on May 26, 1911; that on June 2 the treasurer of the mortgagee had telegraphed to the same brother stating that the sale would take place on June 17, and that on June 3 that brother had written to the plaintiff, who was in San Francisco in the State of California, stating the substance of the correspondence with the treasurer and the pendency of the sale and making suggestions as to the brothers purchasing the property at the foreclosure sale. The master also found that the mortgagee had mailed copies of the paper containing the published notice to the plaintiff. There was no evidence that any of the brothers had requested a postponement of the sale or had communicated with the mortgagee or its officers or attorney except as above described. Twenty persons attended the sale on June 17 and the property was sold for $3,900, which was less than its value. The plaintiff's father and his second wife, the purchaser, continued to occupy the property until 1917, when he died. Two months later, this suit was brought. *Held*, that

(1) It was a reasonable inference that the letters conveying to the plaintiff notice of the impending sale were received by him;

(2) The findings of the master and reasonable inferences to be drawn therefrom did not warrant a finding of collusion and lack of good faith on the part of the defendants;

(3) The mere fact, that the property brought less than its value, did not invalidate the sale.

BILL IN EQUITY, filed in the Superior Court on April 11, 1917, and afterwards amended, by William K. Porter, one of the three sons of Flora M. Porter, late of North Adams, who were entitled as remaindermen after a life estate in their father, Arthur C. Porter, to real estate in North Adams of which their mother had died seised, against Fannie E. P. Porter, the wife of the plaintiff's father by a second marriage, and the North Adams Savings Bank, seeking to set aside a sale and conveyance of the real estate to the defendant Fannie E. P. Porter in foreclosure of a power of sale mortgage placed upon the property by the plaintiff's mother in her lifetime.

In the Superior Court, the suit was referred to a master. Material findings of the master are described in the opinion. After the filing of the master's report the suit was heard by *N. P. Brown*, J., upon a motion by the defendants for a recommittal of the report to the master and a motion by the plaintiff that the report be confirmed, and, the motion to recommit the report being denied and the report confirmed, it was further heard upon the pleadings and the master's report. Findings and rulings of the judge and

the order for a decree are described in the opinion. The defendants alleged exceptions.

The case was submitted on briefs at the sitting of the court in September, 1920, and afterwards was submitted on briefs to all the Justices except the Chief Justice.

*M. E. Couch,* for the defendants.

*F. H. Cande & F. M. Myers,* for the plaintiff.

CROSBY, J. This is a suit in equity, brought to set aside a sale of real estate made under the power contained in a mortgage. Flora M. Porter, owner of the real estate in question, on June 11, 1889, executed a mortgage thereon to the North Adams Savings Bank to secure the payment of a demand note for $3,500. She died intestate on March 8, 1893, leaving a husband, Arthur C. Porter, and three sons, William K. Porter (the plaintiff), John L. Porter, and Frederick A. Porter. Arthur C. Porter became tenant for life of the real estate covered by the mortgage, and the three sons became vested with the fee in the estate in remainder subject to the life estate. Arthur C. Porter married the defendant Fannie E. P. Porter, on April 18, 1894. On June 17, 1911, there being a default in the performance of the condition of the mortgage, the mortgagee, under the power of sale, having duly advertised the real estate for sale, sold it to the defendant Fannie E. P. Porter, who was the highest bidder at the foreclosure sale; and the savings bank caused a deed of the property to be executed to the purchaser, which deed was duly recorded.

The case was referred to a master who filed a report, and thereafter it was heard by a judge of the Superior Court upon the pleadings and the master's report. He filed a "Memorandum of Findings" wherein he recites that he finds the foreclosure and sale by the bank "was collusive as between its agents and attorneys and Arthur C. Porter and his attorneys and . . . [was] not conducted in good faith as between said bank and the plaintiffs and with reasonable regard for the interests of the plaintiffs." He also included in the "Memorandum of Findings" certain rulings of law, among them one that the plaintiff was not guilty of laches, and ordered a decree to be entered, in accordance with the third paragraph of the bill, that the conveyance from the bank to Fannie E. P. Porter and all conveyances described in subsequent paragraphs of the bill be null and void as to the plaintiff. The

case is before us on the exceptions of the defendants to the findings and rulings so made.

The right of a party to allege exceptions in any civil case in law or equity is given by R. L. c. 173, § 106, as amended by St. 1906, c. 342, § 3, and St. 1911, c. 212, and provides that "Exceptions may be alleged by any party who is aggrieved by an opinion, ruling, direction or judgment." A finding of fact is in no proper sense an "opinion, ruling, direction or judgment." Accordingly there can be no consideration of the correctness of findings of fact in equity on exceptions; such findings can be reviewed only by appeal, provided the evidence is reported. *McCusker* v. *Geiger*, 195 Mass. 46, 52. *Kennedy* v. *Welch*, 196 Mass. 592, 594. *Eaton* v. *Eaton*, 233 Mass. 351, 369.

A bill of exceptions presents for decision only questions of law.

The principal question for our decision is: Was the order for a decree setting aside the foreclosure sale and the deed given by the bank to Fannie E. P. Porter, warranted as matter of law?

The alleged wrongful acts of the defendants are set forth in the sixteenth paragraph of the bill which alleges that the bank did not comply with the conditions of the power of sale in the mortgage in making the sale; that the sale was irregular and void; that the bank and Fannie E. P. Porter and her husband, Arthur C. Porter, "colluded together to cause a foreclosure sale to be carried out in form without complying with the requirements contained in the power of sale in said mortgage in order that the estate of your complainant and the said John L. Porter and Frederick A. Porter in the said premises might be destroyed;" that all of the acts of the defendants and Arthur C. Porter hereinbefore set forth "were caused and attempted to be done with the intent and purpose aforesaid; that your complainant was in California at the time of said purported foreclosure sale and had no knowledge of the attempted proceedings or any opportunity to appear at said sale to protect his interests." It is to be observed that the bill does not allege in what respect the acts of the defendants were in fraud of the rights of the plaintiff, nor in what manner the foreclosure was invalid.

The master found that the mortgage was executed by Flora M. Porter and her husband to the bank for $3,500 on June 11, 1889, that the property was occupied by Mrs. Porter and her husband

until her death in 1893, and that he occupied the premises until his death on January 11, 1917; that he married the defendant Fannie E. P. Porter, in 1894, and she has lived on the premises from that date until the present time. He further found that before May 26, 1911 (the date of the first publication of the notice of foreclosure), there was a default in the conditions of the mortgage, which default continued until June 17, 1911, when the mortgage was foreclosed; that notice of the foreclosure sale was published on May 26, June 2, and June 9, 1911, and that on June 17, 1911, the property was sold, and was bid in for the defendant Fannie E. P. Porter. The affidavit of notice of sale made by the treasurer of the bank, which is made a part of the report, shows that the mortgagee's notice of sale was published upon the dates named in the North Adams Herald, a newspaper published in North Adams, where the real estate is located. The master found that "the facts relating to the foreclosure as recited in the affidavit in the deed under power in power of sale mortgage are established by the evidence in this case," and that the "amount of principal and interest and charges applicable to this mortgage at the time of sale was $3,900.65. The amount of $3,900 was paid by said Fannie E. P. Porter by the execution by her of a mortgage note secured by mortgage in the amount of $3,900 dated June 17, A. D. 1911. At said sale there were about twenty persons present. So far as it appears the North Adams Savings Bank made no effort to secure bidders to attend the foreclosure sale other than by the publication of the foreclosure notice on May 26th, June 2d and June 9th, A. D. 1911."

It also appears from the report that on February 1, 1912, Fannie E. P. Porter and her husband executed a note and mortgage to the North Adams Savings Bank for $2,970 upon the real estate covered by the mortgage in question and other lands owned by the grantors; that the indebtedness so secured existed before the foreclosure of the mortgage on June 17, 1911, and that Fannie E. P. Porter "had signed this note as an accommodation." On December 21, 1915, Fannie E. P. Porter deeded the property described in the mortgage which was foreclosed to Ezra D. Whitaker, subject to the mortgage, and thereafter Whitaker conveyed the property to Arthur C. and Fannie E. P. Porter, subject to the mortgage to the bank, "which the grantees by accepting

this deed assume and agree to pay." Both of the deeds last described were recorded on February 10, 1916.

The report recites that "Williston C. Bacon employed by said North Adams Savings Bank, testified that to the best of his recollection he sent marked copies of the newspaper containing the notices of foreclosure on May 27th, A. D. 1911, to John L. Porter, Frederick A. Porter and William K. Porter." The master found that the bank had the addresses of John L. Porter and William K. Porter, and that at the time of the foreclosure, the former lived in New Orleans, and the latter in San Francisco; that Ezra D. Whitaker, the treasurer of the bank, testified that he thought Frederick A. Porter lived in North Adams at the time of the foreclosure; that Bacon testified "that he did not remember where said Frederick A. Porter was living but that he sent him a paper." The master states that he is unable to make a finding as to the residence of Frederick A. Porter at that time.

The report shows that John L. Porter, one of the remaindermen, wrote to Whitaker, assistant treasurer of the savings bank, a letter dated New Orleans, Louisiana, May 12, 1911, (which evidently is in reply to a letter received on April 14,) requesting the opinion of Whitaker and his advice as to the desirableness of the writer and his brothers purchasing the property at a foreclosure sale, and asking what sum the bank would be willing to loan on it in that event; the letter also contains the following: "You expressed the opinion that the property would probably not realize much more than the bank claims which I understand are $3,500 together with the outstanding interest." Under date of May 25, 1911, Whitaker replied, in part, as follows: "the mortgage is $3,500 and . . . on June 11th next, there will be $315 back interest, that is interest for eighteen months. . . . We have left the bank's end of this matter in the hands of Judge C. T. Phelps of this city, and I would suggest that you write to him. Your father's attorney is Mr. P. J. Ashe and I understand that the attorneys have gotten together and arranged that the bank should foreclose the mortgage. This will leave the property open for either your father or yourself and your brothers to bid it in. The foreclosure sale will take about a month so that you will have plenty of time to make arrangements if you wish to bid the property in. In case the attorneys decide to foreclose I will see that a

notice of the sale is sent to yourself and your two brothers so that you may be fully informed as to the date of the sale and the terms, etc. In regard to your questions as to what the bank would do, I will say that very probably they will be perfectly willing to continue the mortgage of $3,500 providing the interest was paid promptly, but we cannot and will not allow it to run along in the shape in which it has been running."

On June 2, 1911, the treasurer of the bank sent a telegram to John L. Porter to the effect that the real estate would be sold under foreclosure proceedings on June 17, 1911. On June 3, 1911, John L. Porter wrote to his brother William K. Porter (the plaintiff) reciting the substance of the letter he had received from Whitaker, and also informing him of the telegram from Whitaker stating that the property "was to be sold on foreclosure proceedings on the 17th." The letter so sent to the plaintiff contained suggestions as to the advisability of the three brothers making some arrangement respecting buying the property. There is nothing to show that the plaintiff or either of his brothers requested a postponement of the sale or afterwards communicated with the bank or with any of its officers or attorneys.

It has been uniformly held by this court that the mortgagee, in the exercise of a power to foreclose a mortgage for breach of condition, must not only comply with its literal terms, but is required to use reasonable diligence to protect the rights of those who have an interest in the estate. In the case at bar, it appears that notice of the sale was duly published in a newspaper in North Adams where the property is situated, and that the sale was conducted in all respects with a literal compliance with the terms of the mortgage; it also appears that notice of the sale was given to the plaintiff and his brothers by mailing to them copies of the newspapers containing the notice; at least, the witness Bacon testified that to the best of his recollection he so mailed the copies and there was no evidence offered to show that they were not received, nor does the master so find. In addition, the contents of the letter written by the treasurer of the bank to John L. Porter was communicated to the plaintiff, and if received by the latter, he had ample time to protect his rights at the sale if he had desired to do so. In the absence of any evidence to the contrary, and without a finding of the master that these letters were not received

by the persons to whom they were directed, it is a reasonable inference that they were duly received. We find nothing in the letter written by the treasurer of the bank to indicate that the plaintiff or his brothers could have been deceived or misled. In addition, the finding that the treasurer of the bank, on June 2, 1911, sent a telegram to John L. Porter stating that the property would be sold under foreclosure proceedings on June 17, and that the recipient of this telegram on the day following its receipt informed the plaintiff by letter of its contents, plainly show that the bank exercised reasonable diligence to protect the rights of the remaindermen.

Although there was evidence that the property brought less than its value, that fact does not render the sale invalid. *Learned* v. *Geer*, 139 Mass. 31. *Austin* v. *Hatch*, 159 Mass. 198. *New England Mutual Life Ins. Co.* v. *Wing*, 191 Mass. 192. *Taylor* v. *Weingartner*, 223 Mass. 243.

The finding that about twenty persons attended the sale is evidence that it was not conducted in secrecy nor for the purpose of disposing of the property for less than its real value.

In view of the facts found by the master and the reasonable inferences to be drawn therefrom, we are unable to find any evidence of fraud or collusion on the part of the bank, the life tenant, Fannie E. P. Porter, or of the attorneys of the parties. The plaintiff had ample notice of the sale and full opportunity, either personally or by agent, to protect his own interests. While it was the duty of the life tenant to pay the interest on the mortgage, *Plympton* v. *Boston Dispensary*, 106 Mass. 544, 547, he failed to do so, and after it had become in arrears for eighteen months, it was the right, if not the duty of the bank, to protect its interests by the institution of foreclosure proceedings. The defendant Fannie E. P. Porter, although she was the wife of the life tenant, was not precluded from bidding off the property at the sale provided she acted in good faith.

In view of the conclusion reached, we need not determine whether it could have been ruled that the plaintiff's right to maintain the bill is not barred by laches.

We are of opinion that as matter of law the findings of the master and the reasonable inferences to be drawn therefrom do not warrant a finding of collusion and lack of good faith, as alleged

in the bill. Accordingly there was no evidence to justify a decree for the plaintiff. The exceptions must be sustained and the bill dismissed. St. 1913, c. 716.

*So ordered.*