GERTRUDE T. ROSS *vs.* BLANCHE VADEBONCOEUR.

Bristol.     October 25, 1937. — November 30, 1937.

Present: FIELD, DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Mortgage,* Of real estate: extension, foreclosure. *Contract,* What constitutes.

The receipt by a mortgagee, after the principal of a mortgage became overdue, of interest in advance was not in itself an agreement to extend the time for payment of the principal debt which would prevent foreclosure of the mortgage before the date to which interest had been paid.

A conclusion of absence of good faith and of reasonable diligence to protect the rights of the mortgagor in the foreclosure of a mortgage of real estate by sale was not required by findings that no actual

notice was given to the mortgagor, that the auctioneer had acted as agent for the holder upon the acquisition of the mortgage, that the holder, through an agent procured by· the auctioneer, bid in the property at much less than its value, and that the holder's intent was to acquire the property as cheaply as he reasonably could.

BILL IN EQUITY, filed in the Superior Court on April 10, 1936.

The final decree was entered by order of *Dowd,* J.

*G. L. Sisson,* for the plaintiff.

*L. Shabshelowitz,* for the defendant, submitted a brief.

DOLAN, J. This is a suit in equity to set aside a foreclosure sale of real estate under a mortgage; for an accounting; and for a reconveyance of the real estate involved upon payment of such amount as may be found due to the defendant upon the note and mortgage given to secure payment. The case was referred to a master whose report was confirmed. A final decree was entered dismissing the bill with costs. The case comes before us on the appeal of the plaintiff from the final decree. The evidence is not reported, and the findings of the master, not being mutually inconsistent, must be accepted as final. *Peabody Gas & Oil Co.* v. *Standard Oil Co. of New York,* 284 Mass. 87, 88.

The facts found are that the plaintiff, who is a resident of New Jersey, was on July 1, 1929, the owner of a certain lot of land situated in Swansea, Massachusetts. On that day she gave to W. Harry Monks a note for the unpaid balance of the purchase price of the premises amounting to $550, payable in two years from the same date, with interest payable semi-annually at six and one half per cent annually, together with $15 each month on account of the principal. The note was also signed by her husband, John R. Ross. At the same time the plaintiff executed a mortgage of said premises to Monks to secure the payment of the note. On July 8, 1935, Monks assigned the mortgage for value to one Zalkind; on September 20, 1935, Zalkind assigned it to the defendant, who paid $150 for it through her agent, one Joseph Madowsky. No notice of either assignment was ever given to the plaintiff, who had moved from Swansea to New York in 1933, and whose address

was known to Monks. She sent payments to Monks from time to time on account of principal and interest, but, as to the latter, after a few payments it was understood by the parties that interest was to be at the rate of six per cent per annum instead of six and one half per cent as provided in the note. The plaintiff had paid interest to Monks in advance to January 1, 1936. On January 2, 1936, she sent Monks a money order for $50. He returned it to her, and it was then that she first learned of the foreclosure sale, which had been held on November 14, 1935. The taxes for 1934 were paid by the plaintiff on October 7, 1935. The 1935 taxes with the interest due thereon were paid by Madowsky in behalf of the defendant on December 28, 1935.

The foreclosure sale was held on November 14, 1935, after due publication of notice as required by the terms of the mortgage deed. The defendant did not know the address of the plaintiff, but the defendant's agent, Madowsky, prior to the sale, made inquiries as to the plaintiff's whereabouts at the office of Monks without success. At the time of the foreclosure sale there was due on account of principal, after deducting overpayment of interest, the sum of $145.39. Madowsky was the auctioneer. He procured one Gomberg to bid at the sale in behalf of the defendant and instructed him to bid not more than $160. Gomberg and the defendant's attorney were the only bidders and the latter stopped bidding when Gomberg bid $160, which was accepted. There were other persons present, none of whom knew of the instructions to Gomberg, and none of whom was prevented from bidding. There was no collusion on the part of the defendant and "she was actuated solely by a desire to obtain the property as cheaply as she reasonably could." The sale was made under the power before any offer or tender of payment of the balance due was made by the plaintiff, and before she expressed any willingness or readiness to pay the same. The fair market value of the property was $300 to $350. Although the plaintiff had paid interest in advance to a date subsequent to the foreclosure sale, there was no agree-

ment in consideration thereof that the time for payment of the note secured by the mortgage should be extended. From 1932 or 1933 the plaintiff knew that Monks wanted his money as soon as he could get it.

The plaintiff raises but two issues; first, that the unconditional acceptance from her of interest in advance upon the overdue note secured by the mortgage constituted a waiver by the holder of the mortgage of his right to call the principal sum; and foreclose the mortgage for default in payment thereof, prior to the date to which interest was so paid; and second, that in the execution of the power of sale the defendant did not exercise good faith and reasonable diligence to protect the rights and interests of the plaintiff.

The first contention of the plaintiff cannot be sustained. Although the receipt of interest in advance may constitute good consideration for an agreement to extend the time for payment of the principal debt, it is settled that such acceptance is not in itself an agreement of extension. In *Blackstone Bank* v. *Hill,* 10 Pick. 129, 133, it is said: "The strongest circumstance showing a renewed credit, is the receiving of interest in advance; but in the case of *Oxford Bank* v. *Lewis,* [8 Pick. 458] where that point was directly adjudged, it was held that that circumstance did not tie the hands of the plaintiffs, if at any time they thought it necessary for their security to bring an action." See also *Jennings* v. *Chase,* 10 Allen, 526; *Central Bank* v. *Willard,* 17 Pick. 150, 154; *Agricultural Bank* v. *Bishop,* 6 Gray, 317, 319. In *Saghbazarian* v. *Cohen,* 275 Mass. 249, 250, where interest was paid on the indebtedness secured by the mortgage after maturity and to a future date, the master found that the receipt and acceptance of interest after the date of maturity "were not an extension of the note under the terms of the agreement." The court held (page 251) that "It is established that ordinarily a receipt is open to explanation and that its written terms are not conclusive upon the parties. There are no findings which require the conclusion that this receipt in the circumstances disclosed was an agreement to extend the mortgage and the note thereby secured."

The plaintiff's second contention cannot be supported on

the facts found.  The mortgage deed contained no provision for notice to the plaintiff of foreclosure sale.  The defendant's inquiry for the plaintiff's address gave evidence of good faith.  That Madowsky was the defendant's agent when she acquired the mortgage did not operate to make it improper for him to act as auctioneer at the foreclosure sale, even though the agent who acted for her at the sale was procured through his offices.  His instructions to Gomberg not to bid more than $160 were unknown to the other persons at the sale, none of whom was prevented from bidding.  The defendant was within her rights in bidding personally, and hence through an agent, at the foreclosure sale.  G. L. (Ter. Ed.) c. 183, § 25.  The disparity between the price for which the premises were sold and their fair market value and the motive of the defendant to acquire the property as cheaply as she reasonably could are not sufficient to invalidate the sale in the absence of a showing of bad faith in the exercise of the power.  In *Gadreault* v. *Sherman,* 250 Mass. 145, 150, it is said:  "It is manifest that the defendant's bid was much below the fair value.  But the power permitted him to buy, and if it is assumed that his purpose was to make as much money as possible, that is insufficient to reopen the foreclosure where as in the case at bar the evidence fails to show bad faith in the exercise of the power."  In *Gordon* v. *Harris,* 290 Mass. 482, 487, the court held that in the absence of any breach of the duties owed to the mortgagor either "before the sale began or in the manner in which the sale was conducted, the mortgagees, who had the right to bid, violated no obligation to the defendant in buying at a price less than the value of the property.  *Cambridge Savings Bank* v. *Cronin,* 289 Mass. 379, 382."  See also *King* v. *Bronson,* 122 Mass. 122, 128; *Downing* v. *Brennan,* 232 Mass. 535, 538; *Johnston* v. *Cassidy,* 279 Mass. 593, 597, and cases cited; and *Chartrand* v. *Newton Trust Co.* 296 Mass. 317.  The result is that the suit cannot be maintained.

*Decree affirmed with costs.*