**In re Mona L. GUILFORD, Debtor.**

**Mona L. GUILFORD, Plaintiff,**

v.

**FIRST AMERICAN BANK FOR SAVINGS AND URBAN HOMES, Defendant.**

**Bankruptcy No. 84–1331–JG.**
**Adv. No. 84–314.**

United States Bankruptcy Court,
D. Massachusetts.

July 25, 1985.

Leon Aronson, Quincy, Mass., for plaintiff/debtor.

John B. Curran, Boston, Mass., for defendant/Bank.

### FINDINGS AND RULINGS RE FORECLOSURE SALE

HAROLD LAVIEN, Bankruptcy Judge.

Plaintiff/debtor's complaint arises from the foreclosure sale of property owned jointly by the debtor and her husband, which they seek to avoid. After a preliminary hearing on the defendant, First American Bank for Savings'[1] motion to dismiss, the Court ordered an evidentiary hearing. Debtor has alleged that the sale price was substantially below market and the result of collusion—namely, the failure of the

---

1. The defendant, First American Bank for Savings, has filed no answer regarding the plaintiff's complaint. No answer being filed, they are defaulted.

Bank to inform the debtors of the sale and the relationship of the buyer and the bank.[2] Accordingly, after reviewing the evidence presented and the memoranda filed, I make the following findings of facts and rulings of law.

Debtor's husband filed a Chapter 13 petition on January 4, 1984. Previously, the defendant, First American Bank for Savings, had scheduled a foreclosure sale for the real property of the now plaintiff/debtor and the then debtor/husband at 272 Gallivan Boulevard, Dorchester. Because of the husband's pending petition, the Bank did not hold the sale and, instead, continued the foreclosure sale during the pendency of the husband's petition until March 6, 1984 and, thereafter, continued the sale, without notification to the husband and wife, to April 6, July 6, and October 1, 1984. The husband's petition was dismissed by the Court on September 7, 1984. The First American Bank for Savings then held a foreclosure sale on October 1, 1984, where it sold the property for $36,700 to the defendant, Urban Homes, Inc. Aside from a bank representative, the auctioneer, and Urban Homes, Inc., no one else attended the sale. Neither the defendant nor her husband were given notice of the sale; this, despite several requests by the debtors, specifically Mr. Guilford, for notice from the Bank of the date of the foreclosure sale. Each time, he was told that he should contact his attorney regarding the date scheduled for foreclosure, the debtor's attorney also appears to have been unable to supply any dates. The Court fails to perceive any reason for the Bank's reluctance in failing to inform the Guilfords regarding any date scheduled for a continued sale.

The Guilfords were not alone in failing to receive notice. As a licensed real estate broker with an office in the Boston area, John Crutchley read with particular interest the original foreclosure notice advertised in the Boston Herald. He attempted to contact the Guilfords regarding the possible sale of the property to him prior to the foreclosure. When that did not materialize, he attended the original foreclosure sale and, later, the March 6th continued sale date. At that time, however, he was told that the sale had been cancelled and the "problem solved." Accordingly, no adjourned date was announced and he made no further attempts at purchasing the property.

I cannot accept that Mr. Crutchley misinterpreted any announcements at the March 6th foreclosure. Mr. Crutchley was an experienced realtor and had expressed an active interest in buying the property that extended not only to attendance at the first two scheduled foreclosures, but contacting the debtors prior to the first scheduled foreclosure sale. Further, he testified that he was willing to bid as much as $60,000 for the property. Mr. Crutchley had more than a passing curiosity regarding the property in question and, if not put off by the misleading statement, it is reasonable to assume, as he testified, that he would have pursued his interest in purchasing the property at foreclosure or otherwise.

■ Regarding the value of the property, Mr. Guilford testified that, as owner of the property and a financial consultant, the property was worth $116,000. This price was attributed to the appreciation of prices in general in the Dorchester area over the past two years, where it was not uncommon for prices to have risen 50% or more. Mr. Crutchley's estimation was somewhat more moderate. In his opinion, the property was worth at least $85,000 in October, 1984. This was based upon the sale of three other houses in the area that he considered comparable. As noted above, however, he was willing to bid as much as $60,000 at the March 6th foreclosure sale.[3]

---

**2.** The Court notes that collusion need not be proven under *Durrett v. Washington National Insurance Co.,* 621 F.2d 201 (5th Cir.1980). While there was evidence of a business relationship between the Bank and buyer, it does not rise in this case to the level of collusion.

**3.** During cross examination, Mr. Crutchley was informed that the Small Business Association

Finally, Edward W. Coliquiry testified on behalf of the defendant, Urban Homes, Inc., a realty company. As an experienced realtor in the Dorchester area of Boston for 23 years, he represented Urban Homes, Inc. at the foreclosure sale of October 1st. Although he was able to bid the minimum opening bid of $36,700, he was willing to bid up to $45,000 for the property, a price he felt was indicative of the fair market value. However, on cross-examination, he admitted that with minimal repairs, the property was worth at least $60,000. After reviewing and weighing all the evidence presented, I find that the reasonable fair market value of the property was at least $60,000, as compared to the selling price of $36,700, a substantial disparity.

▮ Mere inadequacy of price is insufficient grounds under state law to set aside a foreclosure sale. *Sher v. South Shore National Bank*, 360 Mass. 400, 402, 274 N.E.2d 792 (1971); *West Roxbury Co-op Bank v. Bowser*, 324 Mass. 489, 493, 87 N.E.2d 113 (1949); *DesLauries v. Shea*, 300 Mass. 30, 34–36, 13 N.E.2d 932 (1938); *Ross v. Vadeboncoeur*, 298 Mass. 523, 11 N.E.2d 430 (1937); *Sandler v. Silk*, 292 Mass. 493, 497, 198 N.E. 749 (1935); *Freedman v. Peoples National Bank of Marlborough*, 291 Mass. 168, 196 N.E. 846 (1935); *Gadreault v. Sherman*, 250 Mass. 145, 145 N.E. 49 (1924); *McCarthy v. Simon*, 247 Mass. 514, 142 N.E. 806 (1924); *Porter v. Porter*, 236 Mass. 422, 128 N.E. 795 (1920); *Manning v. Liberty Trust Co.*, 234 Mass. 544, 125 N.E. 691 (1920); *Turansky v. Weinberg*, 211 Mass. 324, 97 N.E. 755 (1912); *Stevenson v. Dana*, 166 Mass. 163, 44 N.E. 128 (1896); *Austin v. Hatch*, 159 Mass. 198, 34 N.E. 95 (1893); *Wing v. Hayford*, 124 Mass. 249 (1878); *King v. Bronson*, 122 Mass. 122 (1877); *but see, Fairhaven Savings Bank v. Callahan*, 391 Mass. 1011, 462 N.E.2d 112 (1984); *Chartrand v. Newton Trust Co.*, 296 Mass. 317, 320–21, 5 N.E.2d 421 (1937) ("Mere inadequacy of price obtained will not invalidate a sale unless it is so gross as to indicate bad faith or lack of reasonable diligence"). Further, the absence of bidders at a foreclosure sale does not invalidate a foreclosure sale. *Boyajian v. Hart*, 292 Mass. 447, 198 N.E. 764 (1936); *Manning v. Liberty Trust Co.*, 234 Mass. 544, 125 N.E. 691 (1920). However, a mortgagee, in exercising the power of sale in a mortgage, must *act in good faith and use reasonable diligence* to protect the interests of the mortgagor. *Seppala & Aho Construction Co. v. Petersen*, 373 Mass. 316, 367 N.E.2d 613 (1977); *Sher v. South Shore National Bank*, 360 Mass. 400, 401, 274 N.E.2d 792 (1971); *Milton Savings Bank v. U.S.*, 345 Mass. 302, 187 N.E.2d 379 (1962); *Richmond v. Stanzler*, 327 Mass. 62, 97 N.E.2d 200 (1951); *West Roxbury Co-op Bank v. Bowser*, 324 Mass. 489, 492, 87 N.E.2d 113 (1949); *DesLauries v. Shea*, 300 Mass. 30, 34–36, 13 N.E.2d 932 (1938); *Chartrand v. Newton Trust Co.*, 296 Mass. 317, 320, 5 N.E.2d 421 (1936). As noted by the Court in *Sandler v. Silk*, 292 Mass. 493, 496–97, 198 N.E. 749 (1935):

It has become settled by repeated and unvarying decisions that a mortgagee in executing a power of sale contained in a mortgage is bound to exercise good faith and put forth reasonable diligence. Failure in these particulars will invalidate the sale even though there be literal compliance with the terms of the power. *Krassin v. Moskowitz*, 275 Mass. 80, 82 [175 N.E. 269], and cases cited. *Dexter v. Aronson*, 282 Mass. 124, 127 [184 N.E. 455]. *Boyajian v. Hart*, 284 Mass. 557, 558 [188 N.E. 260]. *Cambridge Savings Bank v. Cronin*, 289 Mass. 379, 382 [194 N.E. 289]. This duty and obligation as to good faith and reasonable care extends for the benefit and is available for the protection not only of the mortgagor but of those claiming in his right, including those holding junior encumbrances or liens. The mortgagee is a trustee for the benefit of all persons interested. *Bon v. Graves*, 216 Mass. 440, 446 [103 N.E.

had a right to redemption that could be exercised for one year following foreclosure. This,

however, did not affect Mr. Crutchley's opinion.

1023]. *Winchester Rock & Brick Co. v. Murdough*, 233 Mass. 50, 54 [123 N.E. 344]. *Clapp v. Gardner*, 237 Mass. 187, 191 [130 N.E. 47]. *Brooks v. Bennett*, 277 Mass. 8, 16 [177 N.E. 685]. *Markey v. Langley*, 92 U.S. 142, 155 [2 Otto 142, 23 L.Ed. 701].

. . . . .

While the manner of conducting the sale is not disclosed in detail, it appears that no notice was given to the plaintiff although she had requested to be notified and had stated her intention to protect her interest by purchase. The trial judge rightly ruled that the plaintiff in the absence of special agreement was entitled as matter of law only to the usual published notice. *Johnston v. Cassidy*, 279 Mass. 593, 597 [181 N.E. 748]. Nevertheless the fact that in these circumstances no notice was sent to the plaintiff is evidence that good faith was not used to obtain the best reasonable possible price. *Drinan v. Nichols*, 115 Mass., 353, 357. *Clark v. Simmons*, 150 Mass. 357, 361 [23 N.E. 108]. *Bon v. Graves*, 216 Mass. 440, 446, 447 [103 N.E. 1023]. The Court would be remiss in its duties if it did not note that, in *Sandler*, the attorney for the plaintiff was told by the attorney for a defendant that there would be no foreclosure without notifying the attorney for the plaintiff. This factor was relevant to at least one Court's determination that foreclosure was valid. *See Sher v. South Shore National Bank*, 360 Mass. 400, 402–03, 274 N.E.2d 792 (1971) ("In the absence of a special agreement to give notice, the entire circumstances here do not support the plaintiff's argument that the collective allegations of his bill amount to an assertion of bad faith or negligence"). This Court, however, finds that the entire circumstances dictate a finding of a paucity of due diligence. The Guilfords requested notice on several different occasions. Such requests, apparently, went ignored. Fur-

ther, at least one potential buyer was not notified that the March 6th foreclosure sale was continued but, even worse, was misled into thinking there would be no sale. The facts in the case at bar do not indicate merely a disparity between the fair market value and foreclosure sale price and an absence of buyers. Rather, the mortgagee failed to provide notice to two parties that had expressed an active interest in the property. The plaintiff/debtor, as mortgagor, has carried its burden to prove that the sale was improperly conducted.[4] *Chartrand v. Newton Trust Co.*, 296 Mass. 317, 320, 5 N.E.2d 421 (1937).

Finally, the Court is compelled to discuss one aspect of *Sher v. South Shore National Bank*, 360 Mass. 400, 274 N.E.2d 792 (1971). Specifically, the *Sher* Court noted:

The other allegation on which the plaintiff relies to support his claim of bad faith is the failure of the defendant bank to give him actual notice of the date of the foreclosure sale. It is conceded that the defendant bank did satisfy the statutory notice requirements of G.L. c. 244, § 14. The statute, by its terms, does not require additional notice. Furthermore, this court has held on numerous occasions that a mortgagee ordinarily is not required, in the absence of a special agreement, to give notice of a foreclosure sale other than by publication. *DesLauries v. Shea*, 300 Mass. 30, 36 [13 N.E.2d 932]. *Dyer v. Shurtleff*, 112 Mass. 165. *Johnston v. Cassidy*, 279 Mass. 593, 597 [181 N.E. 748]. *West Roxbury Co-op. Bank v. Bowser*, 324 Mass. 489, 493 [87 N.E.2d 113]. The plaintiff argues here that the correspondence between the parties constituted a special agreement whereby the defendant bank was under a duty to give him actual notice of the foreclosure sale. We do not agree. The letters exchanged between the two lawyers did not constitute

---

**4.** The Court notes that each party, in their memoranda, concentrated on the *Durrett v. Washington National Insurance Co.*, [621 F.2d 201 (5th Cir.1980) ] *In re Madrid*, [725 F.2d 1197 (9th Cir.1984) ] conflict. That issue has not yet been decided by this Circuit. Because this decision is based upon a breach in duty owed by the mortgagee, determination of that issue by at least this Court is reserved for another day.

a special agreement which would entitle the plaintiff to notice beyond the requirements of G.L. c. 244, § 14. The plaintiff seeks to place a burden upon the defendant bank based upon his unilateral action.

In the *Sher* case, publication accurately gave the date of sale and only special notice was not given while, in our case, publication was not made of the actual sale date, no notice by publication or otherwise was given of the continued date and, not only was no announcement made of an adjourned date but, in fact, erroneous information was given that no sale was contemplated in the future, an obviously misleading statement, the effect of which was to chill the sale and discourage potential bidders. Further, where a party expresses an interest in the proceeding,[5] it would appear consistent with mortgagee/secured creditor duty to use due diligence. *Cf.* U.C.C. § 9–504(3), and *First National Bank of Maryland v. DeDomenico*, 40 U.C.C.Rep. 7 (Md. Feb. 6, 1985). Any cost incurred because of such notice is merely added to a secured party's recovery from the sale [6] and would protect the interests of the debtors and secured creditors, alike.[7]

Judgment for the debtor. The foreclosure sale is avoided and the mortgagee is to receive a lien for any value paid or incurred due to its purchase at the foreclosure sale under 11 U.S.C. § 548(c).

---

**5.** Of course, in the case at bar, there is more than a lack of notice—specifically, one party attending the foreclosure sale was misinformed of any continued date.

**6.** Much has been made of the "inherent unfairness" incurred by a good faith purchaser at a foreclosure sale and the possible effects at such sales. *See In re Madrid*, 725 F.2d 1197, 1202 (9th Cir.1984). However, where the purchaser is provided a lien for value transferred and costs incurred, any such effects are minimized. *See also, In re Hulm*, 738 F.2d 323 (8th Cir. 1984).

**7.** Obviously, this would only be true where a sale results in a surplus. However, where the creditor is facing a deficiency, such notice is in his best interest.