## Louis Kavolsky *vs.* Jacob Kaufman.

Bristol.    October 27, 1930. — November 28, 1930.

Present: Rugg, C.J., Crosby, Pierce, Sanderson, & Field, JJ.

*Mortgage,* Of real estate: foreclosure sale.    *Evidence,* Competency.

While, where the terms of sale under a power of sale in a mortgage of real estate are not prescribed by statute or by the provisions of the mortgage, a requirement of a cash deposit at the sale does not invalidate the sale if the mortgagee acts in good faith and the amounts required are usual and reasonable and calculated for the protection of all parties interested, if, at a sale in foreclosure of a mortgage securing an indebtedness of $11,015, the advertisement of which had stated that the "terms" of the sale would be announced "at the time of the sale", the mortgagee stated that there must be a cash deposit of $1,000 or a certified check in that amount, and, further, that "if you haven't got the money or you cannot arrange to meet those terms, don't bid," and as a result some persons present did not bid, such facts, in connection with all other circumstances attending the sale, were proper for consideration by a jury at a trial involving the issue of the reasonableness of the terms of sale and of the good faith of the mortgagee.

Evidence as to the "usual amount" deposited on foreclosure sales in the vicinity properly was admitted at such a trial, since it was material on the issue of the reasonableness of the terms of the sale and of the good faith of the mortgagee, irrespective of the circumstance that it was not admissible to prove a custom.

Although at such trial mere inadequacy of the price bid and accepted at a second sale, following failure by a successful bidder at a first sale to make the deposit required, would not make that sale invalid or voidable as matter of law, the jury, finding that the price was inadequate and the degree of it, properly might consider such facts in connection with every other fact or circumstance that tended to show unfairness, miscalculation or mismanagement in the conduct of the sale.

It is the duty of a mortgagee of real estate, where the mortgage leaves him a power of selection of methods of giving notice and of making the sale, to act as would a reasonably prudent man to obtain a fair price for property which has a well known value, and, when and if it appears to him that the conditions of sale inhibit a reasonable sale, either to abandon the attempt to sell on the terms stated at the sale or to adjourn the sale to a time when possible bidders knowing of the terms will be able to meet them.

At the trial of an action by a mortgagee of real estate against the maker of the mortgage note for a deficiency remaining after a sale in foreclosure,

evidence of a failure by the mortgagee to change the terms of sale, first announced at the sale, or to adjourn the sale, when it became apparent that the terms were unusual and could not be met by those who had attended the sale, coupled with a purchase by the mortgagee at an inadequate price, was evidence of a want of good faith and of neglect by the mortgagee, if the terms operated to prevent free bidding or tended to decrease the number of persons who otherwise would have been bidders.

At the trial of the action above described, the jury found for the defendant, and it was *held*, that the evidence warranted the verdict.

CONTRACT. Writ dated March 18, 1929.

In the Superior Court, the action was tried before *D. T. O'Connell*, J. Material evidence is stated in the opinion. There was a verdict for the defendant. The plaintiff alleged exceptions.

*L. E. Wood*, (*F. Kavolsky & G. L. Sisson* with him,) for the plaintiff.

*A. S. Phillips*, for the defendant.

PIERCE, J. This is an action of contract brought to recover a balance alleged to be due on two promissory notes. The defendant's answer was a general denial, payment and a special answer "that the plaintiff held, as security for the notes severally declared upon, two certain mortgage conveyances of real estate; that he sold the property on foreclosure and received or ought to have received an amount of money sufficient to pay the notes in question; that if a lesser amount was in fact realized, the plaintiff did not exercise that ordinary care and diligence and perform the duties in the conduct of the foreclosure sale which devolved upon the mortgagee on account of the relationship of the parties."

At the trial it was agreed that the amount of indebtedness due on the mortgage notes was $11,015 at the date of the foreclosure sale. It was admitted that at the date when the foreclosure took place there was a default in the payment of the two notes, and that the plaintiff in this action had the right to foreclose the mortgage. It was agreed by the defendant's counsel that the legality of the sale, so far as conforming to the legal requirements goes, was complied with. At the close of the evidence the

plaintiff filed motions for directed verdicts in his favor on the first and second counts of his declaration. These motions were denied and the plaintiff excepted. The plaintiff also requested, and the judge refused, subject to the exceptions of the plaintiff, the following rulings: (1) " Upon all the evidence the plaintiff is entitled to recover on the first count "; (2) " Upon all the evidence the plaintiff is entitled to recover on the second count "; (3) " The foreclosure sale of the premises covered by the mortgage from Jacob Kaufman to Louis Kavolsky dated February 15, 1923, recorded in Fall River District Registry book 314, page 91, was a fair and proper sale "; and (4) " In the conduct of the foreclosure sale the plaintiff exercised ordinary care and diligence." The jury took a view of the premises and after a charge by the judge, which was not excepted to, found for the defendant. The case is before this court on the plaintiff's exceptions.

The facts which were warranted by the evidence and could have been found by the jury upon the issue raised by the defendant's special answer, *supra,* are as follows: The defendant bought the property of the plaintiff about six or seven years before the trial for $15,000. Thereafter the defendant Kaufman improved it so that at the time of the foreclosure sale it had cost him $17,500. The property consisted of a three-tenement brick house. The brick building could not be built under $7,000 to $8,000, and before the foreclosure sale the defendant Kaufman had transferred the property to his son. The advertisement of the foreclosure sale, which was held on April 12, 1929, stated that the " terms " of sale would be announced " at the time of the sale." The day of sale was rainy. Twelve or fifteen people gathered on the premises, in an archway, and the plaintiff's son announced before the bidding began, in the hearing of everybody, " Remember gentlemen, this sale is to take place now, and anybody that bids must have $1,000 in cash or a certified check and pay the balance in ten days. I want every man here to feel or I want to feel that he is a bona fide bidder, and those are the terms, and if you haven't got the money or you cannot

arrange to meet those terms, don't bid. Or if you do bid and then you are asked for the money and you haven't got it, the sale will immediately start over again." The auctioneer made the same announcement. The bidding began; one Bernstein bid $8,000 or a little higher and then stopped. One Kandler, who came from Taunton, Massachusetts, and the plaintiff's son then bid, the one against the other, until Kandler bid $9,000 — the highest bid — and the auctioneer struck off the property to him.

As to what then took place the jury could find on the reported evidence that Kandler, in response to the auctioneer's request for the money, offered $500 in cash and stated that he would give a $500 check. The plaintiff's son said, " No, I want the whole $1,000 cash," and Kandler replied, " I have got the money in the bank "; or, they could find on other reported testimony that Kandler said he " could ·give him a check for a couple hundred dollars then, and later get the rest of it," and that the plaintiff's son said to Kandler: " If you mean business and if you have the cash I will wait a half hour," adding that if he could give assurance of responsibility his check would be taken and perhaps a large mortgage. There is no dispute on the evidence, whatever the true story is, that Kandler did not pay $1,000 or any other sum of money to the auctioneer in cash or check. The evidence is not in dispute that at the second sale, which immediately followed the first, all persons present at the first sale remained and there were three or four bidding. They went up to $2,400 and the property was sold for that sum to the plaintiff, who was the highest bidder. There was other evidence that Bernstein " had plenty of money with him, but not $1,000; that he did not bid at the second sale because he did not have $1,000 cash money."

During the trial the defendant was permitted to ask an auctioneer: " What is the usual amount that is made as a deposit on foreclosures sales in Fall River? " and subject to the exception of the plaintiff the witness was permitted to answer, " $200." There was evidence thereafter introduced by the plaintiff to the effect that there is

neither rule nor custom with reference to the amount of deposit required at foreclosure sales. Where the terms of sale under a power of sale are not required by statute or the terms of the mortgage, a requirement of a cash deposit at the sale does not invalidate the sale if the mortgagee acted in good faith and the amounts required were usual and reasonable and calculated for the protection of all parties interested. *Pope* v. *Burrage,* 115 Mass. 282. The evidence received was admissible in the application of the rule to the facts in evidence, and it is immaterial that the answer was not admissible to prove a custom. The requirement first made at the sale, that there must be a cash deposit of $1,000 or a certified check in that amount, could not have been ruled to be unreasonable as matter of law. But the fact that those present were told " if you haven't got the money or you cannot arrange to meet those terms " — that is, to pay $1,000 in cash or a certified check and pay the balance in ten days — " don't bid," was a fact which the jury could properly consider in connection with all other circumstances attending the sale on the issue of the reasonableness of the terms of sale and of the good faith of the mortgagee. Mere inadequacy of the price bid and accepted at the second sale would not make that sale invalid or voidable as matter of law; but the jury, finding that the price was inadequate and the degree of it, might properly consider the finding in connection with every other fact or circumstance that tended to show unfairness, miscalculation or mismanagement in the conduct of the sale. *Learned* v. *Geer,* 139 Mass. 31. *Radley* v. *Shackford,* 226 Mass. 435. *Clapp* v. *Gardner,* 237 Mass. 187. *Gadreault* v. *Sherman,* 250 Mass. 145.

It is the duty of the mortgagee, where the mortgage leaves him a power of selection of methods of giving notice and of making the sale, to act reasonably and to exercise a sound discretion. In such a case it is his duty to act as a reasonably prudent man would to obtain a fair price for property which has a well known value, and, if the conditions of sale inhibit a reasonable sale, it is the duty of the mortgagee when such fact appears either to abandon

the attempt to sell on the terms stated at the sale or to adjourn the sale to a time when possible bidders knowing of the terms will be able to meet them. *Clark* v. *Simmons,* 150 Mass. 357. A failure to change the terms of sale, first announced at the sale, or to adjourn the sale when it becomes apparent that the terms are unusual and cannot be met by those who have attended the sale, coupled with a purchase by the mortgagee, would be evidence of a want of good faith and of neglect by the mortgagee, if the terms operated to prevent free bidding or tended to decrease the number of persons who otherwise would have been bidders. *Clark* v. *Simmons, supra.* In an action upon a mortgage note to recover the balance due after a foreclosure sale, where the mortgagor is not the owner of the equity at the time of sale — the fact in the case at bar — it is open to the maker of the note to show as bearing upon the amount due that the sale was not conducted as it should have been and that more should have been realized; especially if the holder of the mortgage was himself the purchaser at the sale. *Howard* v. *Ames,* 3 Met. 308. *Fenton* v. *Torrey,* 133 Mass. 138. *Boutelle* v. *Carpenter,* 182 Mass. 417, 419. The evidence warranted the jury in finding that the sale was not conducted in good faith or with proper regard to the rights of the defendant. The charge of the judge was full, covered every issue, and was not excepted to.

　　　　　　　　　　　　　　　*Exceptions overruled.*