ERNEST J. DEXTER *vs.* ARNOLD ARONSON & another, administrators.

SAME *vs.* SAME.

Hampden. November 17, 1932.— February 20, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Mortgage*, Of real estate: foreclosure. *Payment. Evidence*, Competency, Of value, Opinion.

Evidence, that, after some bids had been made at a sale in foreclosure of a second mortgage of land, the auctioneer was requested to explain the terms of the sale; that the attorney for the mortgagee then stated to the bidders that the "sale was subject to" taxes, to interest paid by the second mortgagee to the first mortgagee and to the expenses of foreclosure, which in all amounted to about a certain sum and which would have to be paid by the successful bidder in addition to the amount of his bid; that one of those who had previously bid then said, "Well, I am done"; that another person present refrained from bidding "because it was a little too complicated, paying all the various expenses that was called off; I didn't care to go into and invest that much money"; that all bidding ceased, except one bid in behalf of the mortgagee, which was the successful bid; and that such bid was in a sum much less than the fair market value of the property, warranted findings that bidding was discouraged by the statement made by the attorney, that a larger sum might have been realized for the property, and that the sale was conducted improperly.

Under G. L. (Ter. Ed.) c. 244, § 14, the expenses enumerated by the attorney as above described could not properly have been included in the amounts of the bids; the statement by the attorney to the bidders prevented a foreclosure sale such as the law requires.

The mortgage above described secured a note payable in stated semi-annual instalments over a period of five years, the balance being payable on demand thereafter. In an action commenced by the payee against the administrator of the maker's estate to recover three instalments after the maker had paid certain instalments and after such foreclosure sale, it was *held*, that

(1) The trial judge could not have been obliged to direct an application, upon the instalments first due, of the proceeds of the sale or of certain rents collected by the plaintiff after entry to foreclose;

(2) There was no error in the exclusion of a certain statement rendered by the plaintiff to the defendant, which merely showed the amount which the plaintiff still alleged to be due after the sale and in no sense showed an application of the proceeds thereof to any particular part of the indebtedness claimed;

(3) It was proper to exclude a question asked of the plaintiff by the defendant's counsel, "If you were ordered to apply those payments . . ., how would you care to apply the payments?": the plaintiff was under no obligation to exercise his option at the time the question was asked;

(4) The judge properly refused to allow the defendant, as administrator, to testify as to the value of the mortgaged property: he was not the owner thereof, nor did it appear that he was an expert in real estate values.

TWO ACTIONS OF CONTRACT. Writs in the District Court of Springfield dated October 23, 1931, and November 21, 1931.

Upon removal to the Superior Court, the actions were tried together before *W. A. Burns*, J. Material evidence is stated in the opinion. The judge ordered verdicts for the plaintiff, in the first action in the sum of $748.57, and in the second action in the sum of $250. The defendants alleged exceptions.

The cases were submitted on briefs.

*J. B. Cowett*, for the defendants.

*S. M. Robson & C. H. Beckwith*, for the plaintiff.

CROSBY, J. These are two actions of contract to recover instalments of principal and interest upon a promissory note given by the defendants' intestate to the plaintiff, which was secured by a mortgage of real estate. The writs are dated October 23, 1931, and November 21, 1931, respectively. In the first action the plaintiff sought to recover two instalments on the principal of $250 each, alleged to have been due and payable on November 1, 1930, and May 1, 1931, and interest on the principal sum of $2,142.87 from May 1, 1930. In the second action, the plaintiff sought to recover an instalment alleged to have been due November 1, 1931, and interest. The note was made by Isaac Brown, dated May 1, 1928, for the sum of $3,142.87,

payable in instalments as follows: $250 six months from date, and a like sum of $250 each six months thereafter for a period of five years from date, the balance on demand thereafter with interest payable semiannually, at the rate of six per cent per annum. The defendants' answer is a general denial, payment, allegation of bad faith on the part of the plaintiff in foreclosure proceedings and that by reason of such bad faith the defendants suffered damage which they are entitled to recoup in this action, statute of limitations, and the equitable defence that they are to be absolutely and unconditionally relieved from the payment of the whole or any part of the claim of the plaintiff because of what occurred at the time and place of the foreclosure sale on January 7, 1931. The answer is the same in each case.

The cases were tried together. At the close of the evidence the plaintiff filed a motion in each case that the judge direct the jury to return a verdict for the plaintiff in the sum of $748.57 and $250 respectively. The motions were allowed and verdicts were returned accordingly. The cases are here on the defendants' exceptions.

It appears from the record that on May 1, 1930, the principal of the note had been reduced to $2,142.87. No payment on the principal or interest had been paid thereon since that date. On December 10, 1930, the plaintiff made an entry on the mortgaged premises under the terms of the mortgage for the purpose of collecting rents and foreclosing the mortgage. He collected in February, 1931, after a foreclosure by sale, rents for the month of January, 1931, amounting to $140. The property was sold to the plaintiff at the foreclosure sale held on January 7, 1931, as appears in the foreclosure deed, and affidavit of sale, and as testified to by witnesses for the plaintiff, for $1,900 subject to taxes and a first mortgage of $12,500. It further appeared that there was owing to the plaintiff at the time of the sale the amount still due on the note ($2,142.87), interest amounting to $87.84, interest paid on a prior mortgage amounting to $375, and expenses of foreclosure of $100, in all a total of $2,705.71. The plaintiff refused on the advice of counsel to apply the $1,900 for which he had bought the property, or any part

thereof, on the note, and this is also true of the $140 rents collected. He considered that he should first receive the payments that were first due on the note, and accordingly brought the present actions. At the trial the defendants sought to have the judge order an application of the payments to be made on the note which was refused and verdicts were directed for the plaintiff. We are of opinion that in view of the testimony introduced by the defendants the direction was erroneous. There was testimony introduced by the defendants from which the jury could have found that the foreclosure sale was not conducted by the mortgagee with that good faith which was required in the circumstances. *Krassin* v. *Moskowitz*, 275 Mass. 80, 82, and cases cited.

The foreclosure notice provided: "Terms: Five Hundred Dollars cash at time and place of sale as earnest money; other terms made known at the time and place of sale." Several witnesses called by the defendants testified that during the progress of the sale Mr. Robson, the plaintiff's attorney with "unlimited power," stated to those present that the property was being sold subject to the reimbursement of the interest which had already been paid by the plaintiff to the first mortgagee; and also subject to the fees and expenses of foreclosure that would be incurred.

Gelasse J. Dragon, called by the defendants, testified that he made several bids at the sale; that when he arrived there the first bid he heard was around $1,600; that the last bid he made was $1,875 over Chamberland's bid of $1,850; that Chamberland's bid then was $1,900 which the witness understood was subject to a first mortgage of $12,500 to the Woronoco Savings Bank, taxes, foreclosure expenses, and reimbursement to the second mortgagee of the amount he theretofore had paid on account of first mortgage interest; that after Chamberland's bid of $1,900, he (the witness) asked the auctioneer to explain the terms of sale; that Mr. Robson (attorney for the plaintiff) then explained, "out loud so that everybody could hear, that the terms of sale were $500 down, which terms the witness said he already knew, and that the sale was subject to taxes which were about $540 and also subject to the interest which Dexter

had paid to the first mortgagee of about $360 and subject also to the foreclosure expenses of around $135 or $140"; that the witness asked "that would be in addition to be paid to the bid we are making now?" and Mr. Robson replied, "Yes," and the witness then said, "Well, I am done"; that he had seen the foreclosure notice in the paper and had read it; that in his opinion the premises were then valued around $18,000 but "to buy to make anything on the property, figuring the expenses you might go through," the witness estimated the fair value of the property was around $16,000. Arnold Aronson, one of the defendants, testified that Dragon asked the auctioneer "how much additional money would be needed for the purchase, additional to the amount that was bid" and Mr. Robson said that the amount "necessary was the amount of the unpaid taxes, and the interest to the first mortgagee, the expenses, and whatever was due to the date of the sale to the second mortgagee"; that Mr. Robson "gave a figure of approximately $800 or $900 for everything besides the $1,900." Abraham Saffer, called by the defendants, testified that he attended the sale because he intended to buy the property, and that he did not bid "because it was a little too complicated, paying all the various expenses that was called off; I didn't care to go into and invest that much money."

Other witnesses called by the defendants testified to like effect.

It is manifest from the above testimony that the jury would have been warranted in finding that as a result of the representations made by Mr. Robson, the attorney of the mortgagee, bidding at the sale was discouraged; that the property which could be found to have had a fair market value of $16,000 was sold at a price much less than this amount; that more might have been realized, and that the mortgagee as the purchaser obtained the property of a value in excess of the amount due him. The evidence warranted a finding that the sale was not properly conducted and that more could have been realized, especially as the mortgagee was the purchaser at the sale. *Levey* v. *Higginson*, 266 Mass. 381, 385. *Kavolsky* v. *Kaufman*,

273 Mass. 418, 423, and cases cited. In such circumstances the direction of verdicts for the plaintiff in the named amounts was error.

The procedure as to the foreclosure of mortgages is governed by G. L. (Ter. Ed.) c. 244, § 14. The property could not properly have been sold upon the terms and conditions stated at the sale by the attorney for the mortgagee. The sale by the holder of a mortgage is the equity of redemption of the mortgagor or of his grantee. "The bids made at such sale must be for that which is to be sold and for that alone; that is to say, the bids must be for the value of the interest in the estate which will pass under the foreclosure deed. If there are prior mortgages, these cannot be sold, and their amount ought not to be included in the bids. The same is true of taxes, assessments and liens, and whatever else may be superior to the mortgage being foreclosed. They must all be excluded from the amount of the bids. The bids in amount are and must be net and not gross." *Brooks* v. *Bennett,* 277 Mass. 8, 16. When it was stated in substance by the plaintiff's attorney at the sale that the various amounts to which he referred were to be paid by the purchaser in addition to the amount bid, all bidding came to an end except the last one of $1,900 which was made on behalf of the plaintiff. It is apparent that this statement prevented a foreclosure sale such as the law requires.

A question was raised by the defendants as to the application on the indebtedness of the rents collected by the mortgagee for the month of January, 1931. The judge in any case, contrary to the contention of the defendants, would not be obliged to direct an application of the proceeds of the sale upon instalments first due on the note. *Draper* v. *Mann,* 117 Mass. 439, 441. The same is true of the rents collected by the mortgagee for the month of January, even if it be assumed that on the evidence he was entitled to an accounting for those rents, which we do not decide. See *Beal* v. *Attleborough Savings Bank,* 248 Mass. 342. The defendants excepted to the exclusion of a statement given them by the mortgagee which they con-

tend shows an application of payments. But this was apparently only a statement setting forth the amount due the plaintiff of $2,705.71, from which had been subtracted $1,900, the amount received at the foreclosure sale. It merely showed the amount which the plaintiff still alleged to be due, and in no sense showed an application of the proceeds to any particular part of the indebtedness claimed. No error of law is shown by its exclusion.

The defendants' counsel asked the plaintiff, "If you were ordered to apply those payments . . . totaling $2,000, how would you care to apply the payments?" This question was rightly excluded. *Draper* v. *Mann*, 117 Mass. 439. He was under no obligation to exercise his option at the time the question was asked.

The defendants excepted to the refusal of the trial judge to allow the defendant Aronson, as an administrator of the estate of Isaac Brown, the mortgagor, to testify to the value of the mortgaged property. This exception must be overruled. The witness was not the owner of the property, nor did it appear that he was an expert in real estate values. *Johnston* v. *Cassidy*, 279 Mass. 593, 596–597.

As verdicts could not properly have been ordered for the plaintiff the entry must be

*Exceptions sustained.*