MILTON SAVINGS BANK & others *vs.* UNITED STATES OF AMERICA & another.

Plymouth. November 5, 1962. — January 7, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Mortgage,* Of real estate: tax liens, foreclosure. *Real Property,* Tax liens.

Upon a properly conducted foreclosure by sale of a real estate mortgage in the usual Massachusetts form, the purchaser took title to the property free and clear of certain liens, junior to the mortgage, outstanding on the property at the time of the foreclosure under 26 U. S. C. (1958) § 6321 for unpaid Federal withholding taxes of the mortgagor and under G. L. c. 151A, § 16, for unpaid employment security taxes of the mortgagor. [304–305, 308]

Discussion of the nature of a Massachusetts real estate mortgage. [305–306]

Federal tax liens outstanding on mortgaged real estate under 26 U. S. C. (1958) § 6321 for unpaid withholding taxes of the mortgagor are not "other public taxes" within G. L. c. 244, § 14. [306]

A statement in a notice of a sale in foreclosure of a real estate mortgage, that the property would be sold "subject to any and all tax liens . . . if any there be," did not have the effect of preserving against the pur-

chaser's title certain liens, junior to the mortgage, outstanding on the property at the time of the foreclosure under 26 U. S. C. (1958) § 6321 for unpaid Federal withholding taxes of the mortgagor and under G. L. c. 151A, § 16, for unpaid employment security taxes of the mortgagor. [306–307]

PETITION filed in the Land Court on November 17, 1960. The case was heard by *Cotton, J.*

*Lawrence A. Sullivan (Henry P. Monaghan & William J. Conboy* with him) for the petitioners Condon and for Savings Banks Association of Massachusetts, amicus curiae; *John P. Curran,* for Milton Savings Bank, also with him.

*Joseph Kovner,* Attorney, Department of Justice (*Daniel B. Bickford,* Assistant United States Attorney, & *George F. Lynch,* Attorney, Department of Justice, with him), for the United States.

*Edward J. McCormack, Jr.,* Attorney General, *William C. Ellis,* Assistant Attorney General, & *Joseph S. Ayoub,* Assistant Attorney General, for the Director of the Division of Employment Security, submitted a brief.

*James S. Ballantyne* for Massachusetts Conveyancers Association, amicus curiae, submitted a brief.

WILKINS, C.J.   A judge of the Land Court granted this petition to amend two certificates of title to registered parcels of land by striking out tax liens of the respondents, the United States of America[1] and the Commonwealth.   The petitioners are Milton Savings Bank, the holder of two prior recorded mortgages, and Francis D. Condon and Margaret I. Condon, purchasers at foreclosure sales under the mortgages.   The case is here on report.   G. L. (Ter. Ed.) c. 185, § 15.

The parties agreed upon all the facts.   The bank on November 25, 1955, lent $10,000 to Edwin A. Dobson and Adelaide T. Dobson and took their note secured by a mortgage on lots 21 and 22 on First Avenue, Scituate.   On March 15, 1957, the bank lent the Dobsons $9,500 and took their note secured by a mortgage on lot 25.   The mortgages were

---

[1] The United States was made a party respondent pursuant to 28 U. S. C. (1958) § 2410 (a).

in the usual Massachusetts form, and conveyed the fee to the mortgagee subject to defeasance upon performance of a condition subsequent, namely, payment, and conferred the statutory power of sale in the event of default. The mortgages were registered in the Plymouth County Registry District of the Land Court and were noted on the respective certificates of title.

On June 24, 1958, the United States filed in the Registry District a notice of tax lien for withholding taxes against Edwin A. Dobson, in connection with a restaurant operation. The lien was noted on the certificates for lots 22 and 25.

On May 27, 1958, and October 16, 1958, the Commonwealth filed in the Registry District notices of tax liens against Edwin A. Dobson for employment security taxes imposed under G. L. c. 151A, § 16, inserted by St. 1941, c. 685, § 1. The first lien was noted on the certificate for lot 21, and the second on the certificates for all three lots.

On May 13, 1959, upon the bank's petition under St. 1943, c. 57 (as amended through St. 1959, c. 105), the Land Court gave leave to foreclose by taking possession and sale. The bank entered, took possession, and conducted the foreclosure sales at public auction on June 9, 1959, in conformity with G. L. (Ter. Ed.) c. 244, § 14. The petitioners Condon were the highest bidders, and purchased for the aggregate sum of $21,900, an amount in each case less than the indebtedness of the mortgage note and other proper charges. Decrees of the Land Court approving the various steps in the foreclosure proceedings were duly filed in the Registry District.

The judge in the Land Court outlined the Federal tax lien statutes and the Massachusetts substantive law as to mortgages. He reached the conclusion that foreclosure sales divested the Federal junior tax liens, and ruled that this result fell within *United States* v. *Brosnan,* 363 U. S. 237.[1] He also ruled that the liens for State employment security taxes were divested.

[1] In the *Brosnan* case Mr. Justice Harlan, speaking for the majority, said at pages 241–242: "However, when Congress resorted to the use of liens, it came

## The Federal Liens.

The judge's conclusion was clearly correct. The Federal liens were asserted under 26 U. S. C. (1958) § 6321, which provides, "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." To recognize the junior liens would deprive the mortgagee of property without due process of law in violation of the Fifth Amendment to the Constitution of the United States.

The mortgaged real estate was not property belonging to the taxpayer. Under Massachusetts law, as it has been declared for well over 100 years, the mortgagor has merely an equity of redemption accompanied by a right to possession. The paramount title is in the mortgagee. As was said in 1842 by Chief Justice Shaw in *Ewer v. Hobbs,* 5 Met. 1, 3, this was to give the mortgagee "effectual security." Again, a mortgage was defined by Chief Justice Shaw in *Bayley v. Bailey,* 5 Gray, 505, 509, as "a conveyance of real estate, or of some interest therein, defeasible upon the payment of money, or the performance of some other condition." *United States Trust Co.* v. *Commonwealth,* 245 Mass. 75, 78. *Perry* v. *Miller,* 330 Mass. 261, 263. In the *United States Trust Co.* case, Chief Justice Rugg stated that "for many years our statutes have treated the interest of the mortgagee as real estate for property and inheritance taxation. In this aspect the mortgagee is regarded as holding the legal title to the land and not a mere lien for security.

into an area of complex property relationships long since settled and regulated by state law. We believe that, so far as this Court is concerned, the need for uniformity in this instance is outweighed by the severe dislocation to local property relationships which would result from our disregarding state procedures. Long accepted nonjudicial means of enforcing private liens would be embarrassed, if not nullified where federal liens are involved, and many titles already secured by such means would be cast in doubt. We think it more harmonious with the tenets of our federal system and more consistent with what Congress has already done in this area, not to inject ourselves into the network of competing private property interests, by displacing well-established state procedures governing their enforcement, or superimposing on them a new federal rule."

G. L. c. 59, § 4, cl. 2; §§ 11 to 14" (page 78). *Harlow Realty Co.* v. *Cotter,* 284 Mass. 68, 69. It should be emphasized, however, that the property right of a mortgagee of real estate is based upon deed and contract and antedates any statute. See *Hall* v. *Bliss,* 118 Mass. 554, 559; Dane's Abridgment (1824 ed.) Vol. 4, c. 112, Mortgages, 164–165; Report of the Commissioners Appointed to Revise the General Statutes of the Commonwealth (1835) Part III, c. 107, §§ 7–8 (p. 187), and notes (p. 192).

In the answer of the United States there was a prayer for a determination that the Federal tax liens constituted "other public taxes" within § 14. The judge rejected this interpretation and ruled, correctly as no one now doubts, that the phrase applied only to taxes based upon real property, such as local real estate taxes and betterments. The United States now concedes that the Federal tax liens were not preserved by G. L. (Ter. Ed.) c. 244, § 14.

In its brief the United States argues two issues, neither of which was discussed in the careful and extended decision of the judge of the Land Court. It argues: (1) The Federal tax liens were expressly preserved by the terms of the notices of sale. (2) Property may not be divested of a junior Federal tax lien by a foreclosure of a senior mortgage under a power of sale pursuant to G. L. (Ter. Ed.) c. 244, § 14, if the result is to preserve and afford priority to liens junior under Federal law to the Federal tax lien. The second issue is not presented on the record, and must be ignored as immaterial.

The first issue, which is very narrow and untenable, is based upon the phraseology of the actual notices of sale of these particular properties. In the notices were the words, "Said premises are to be sold subject to any and all tax liens, unpaid taxes, tax titles, and any or all municipal liens and assessments, *if any there be*" (italics supplied). The United States seizes upon the phrase "subject to any and all tax liens" as expressly including the junior Federal tax liens which are an occasion for this petition.

The notices were given by the mortgagee pursuant to G. L. (Ter. Ed.) c. 244, § 14, which prescribes the procedure

in the foreclosure of a mortgage of real estate under a power of sale, and sets forth the form of the notice and the requirements for its publication. The pertinent words are that a sale will be "subject to . . . *all* restrictions, easements, improvements, outstanding tax titles, municipal or other public taxes, assessments, liens or claims in the nature of liens . . ." (italics supplied).

In other words, a sale subject to liens and taxes "if any there be," as stated in the notice given by the mortgagee, is now contended to be broader than the requirement of § 14, which refers to "all" liens.

We are of opinion that the argument based upon the form of the notices is even less persuasive than that based upon § 14 which has been abandoned. It would have been unreasonable for anyone to construe the mortgagee's notices as intended to go beyond the requirements of § 14, and gratuitously to reach out and protect junior encumbrances. See *Holzman* v. *Bristol County Sav. Bank,* 277 Mass. 383, 385–386.

A mortgagee in executing a power of sale contained in a mortgage is bound to exercise good faith and to use reasonable diligence to protect the rights and interests of the mortgagor under the contract. *Clark* v. *Simmons,* 150 Mass. 357, 359. *Sandler* v. *Silk,* 292 Mass. 493, 496. *Union Mkt. Natl. Bank* v. *Derderian,* 318 Mass. 578, 581–582. *West Roxbury Co-op. Bank* v. *Bowser,* 324 Mass. 489, 492. As Knowlton, J., said in *Clark* v. *Simmons,* at pages 359–360, "In determining whether, in a particular case, a mortgagee has acted in good faith and with a due regard for the interests of the mortgagor, the nature of his authority must be considered. He has a right, after giving the prescribed notices, to have the mortgaged property sold by auction for the payment of his debt. It is his duty, for the benefit of the mortgagor whom he represents, so to act in the execution of the power as to obtain for the property as large a price as possible. . . . [S]o far as the mortgage leaves him a power of selection of methods of giving notice and of making the sale, he is to act reasonably and exercise a sound discre-

tion.'' In the case at bar, the bank would not have been acting reasonably if it had made the sales subject to junior liens. Had it done this, it would not have been trying to obtain for the property as large a price as possible, but would have been taking a course which would have tended to reduce the returns on the foreclosure sales and thus to increase any deficiency.

The cases cited by the United States do not support the contention that the terms of the notices went beyond what the statute required. They relate to sales subject to specified claims and hold that a purchaser at foreclosure sale cannot sue a mortgagor for the amount of such claims. *Spencer Sav. Bank* v. *Cooley,* 177 Mass. 49. *Crane* v. *White,* 215 Mass. 478. *Natick Five Cents Sav. Bank* v. *Bailey,* 307 Mass. 500. In the case at bar the question is to what claims the sales were made subject.

## THE MASSACHUSETTS LIENS.

The argument of the director of the division of employment security in support of the employment security tax liens is but a feeble echo of that of the United States as to the scope of the notice of the foreclosure sale. This we have rejected. Moreover, the argument is made in the teeth of the statute creating the lien. General Laws c. 151A, § 16, inserted by St. 1941, c. 685, § 1, provides that such a lien (1) shall be subordinate to prior recorded liens, such as the mortgages in the case at bar, and (2) shall not even be valid against a subsequent mortgagee unless and until a notice of the lien is recorded, or, in an appropriate case, registered.

*Decision affirmed.*