**In re Joan RUEBECK, Debtor.**

**Joan RUEBECK, Plaintiff,**

**v.**

**ATTLEBORO SAVINGS BANK and Robert V. McKearney, Defendants.**

**Bankruptcy No. 85–712–HL.**
**Adv. No. 85–266.**

United States Bankruptcy Court,
D. Massachusetts.

Nov. 14, 1985.

Henry C. Ellis, Assiran & Ellis, Taunton, Mass., for plaintiff/debtor.

William Billingham, Pembroke, Mass., Trustee.

John P. Pollis, Armstrong, Pollis & Clapp, North Attleboro, Mass., for defendant/Bank.

Robert V. McKearney, pro se.

## MEMORANDUM ON FORECLOSURE AS A FRAUDULENT CONVEYANCE

HAROLD LAVIEN, Bankruptcy Judge.

Can a foreclosure sale conducted in accordance with applicable state law be a fraudulent conveyance under 11 U.S.C. § 548(a)(2)(A) and (B)(i)? This is a case of first impression within this district. However, the questions presented in this case have been considered in other districts. To date, the courts, district and circuit, that have considered this question, are divided. Certain circuits follow the line of reasoning articulated in *Durrett v. Washington National Insurance Company*, 621 F.2d 201 (5th Cir.1980), which states that the transfer takes place at the time of the foreclosure sale and not on the earlier date of the mortgage or deed of trust. In addition, these courts find a fraudulent conveyance if the property is sold for less than 70% of fair market value. On the opposite pole, there are those circuits following *In re Madrid*, 725 F.2d 1197, (9th Cir.1984) *cert. denied*, —— U.S. ——, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984) which, between the Appellate Panel and Circuit Court, applies a dual rationale. First, under this line of cases, a foreclosure is not a fraudulent conveyance both because it is not a transfer. Second, there is a presumption that the price received at a sale held in compliance with state law is reasonable equivalent value. Finally, there is also the more moderate stance of *In re Richardson*, 23 B.R. 434 (Bankr.D.Utah 1982) that calls for a case by case analysis on the full spectrum of facts presented in each case.

*Facts*

On August 2, 1978 the plaintiff and her husband as tenants by the entirety entered into a promissory note with the Attleborough Savings Bank, one of the defendants in this action. The Bank received a mortgage on the plaintiff's home in exchange for $29,600. The plaintiff has been in default on this note since January 26, 1983. On December 18, 1984, the bank obtained relief from the Soldiers & Sailors Relief Act by a judgment from the Land Court which, under applicable state law, simply allowed the mortgagee to enter and sell the property under the terms of its mortgage.

In preparation for this foreclosure sale, the Bank published a legal notice of the sale in a newspaper of general circulation within the vicinity of the property in question. However, on February 19, 1985, the plaintiff's husband filed a Chapter 7 petition in this court, effecting an automatic stay. Consequently, the bank was unable to go forward with its sale. The Bank adjourned the sale by announcement of the auctioneer but, without further notice, either by newspaper advertisement or mailings. There were three adjournments, first, to March 20, 1985, then, to April 19, 1985 and, finally, to May 20, 1985, when the sale occurred. This sale occurred after obtaining relief from the stay from the bankruptcy court in the husband's case in which the property was scheduled for $45,-000.[1] The debtor neither received nor had notice of the sale and, therefore, did not attend.

The Bank and Robert V. McKearney were the only parties present at this sale of May 20th. The sole reason Mr. McKearney knew that the sale would take place on May 20th was his persistence in pursuing this piece of real estate by calling the Bank on numerous occasions to inquire as to the status of the sale. Mr. McKearney was the successful bidder at the sale, and purchased the property for the sum of $40,400.

---

**1.** Relief from the stay does not determine or set forth the manner in which the foreclosure should take place or even if there should be a foreclosure. It merely allows the mortgagee to proceed in accordance with the terms of the mortgage and the appropriate state law, as if there had been no previous bankruptcy.

At the time of the sale, the total amount due the Bank was $36,852.56 plus $3,667.24 in tax liabilities owed to the Town of Plainville. The sale price was just sufficient to pay the monies owed the Bank and the Town of Plainville. On the date of the sale, the property had an agreed minimum fair market value of $75,000.

The plaintiff filed her bankruptcy petition on June 26, 1985 and, on July 15, 1985, a complaint to set aside the sale as a fraudulent conveyance under 11 U.S.C. § 548(a)(2)(A) and (B)(i).

The debtor is represented by independent counsel. Although the trustee was not a party to this suit at the time of the trial, he has since intervened with the consent of all the parties. The Bank is represented by counsel and Mr. McKearney, the purchaser of the property, is proceeding pro se.

There is no factual dispute. The purchaser, aside from maintaining that he has proceeded in good faith and should be allowed to obtain his purchase, has neither retained counsel nor submitted a brief. The trustee, the debtor, and the Bank have all submitted memoranda.

*Issues*

Two issues are presented in this case. First, was the foreclosure sale a transfer for less than equivalent value, constituting a fraudulent conveyance pursuant to § 548(a)(2)(A) and (B)(i). Second, should the sale price be accepted as reasonably equivalent value since the foreclosure sale was held in compliance with the state law's notice requirements.

Most conveyancers I am sure, are more than a little surprised, and even shocked, by the proposition that a real estate foreclosure sale conducted in full and complete compliance with both the applicable statute and long established custom[2] may, nonetheless, be a fraudulent conveyance. The immediate assumption is that "some off the wall court is at it again." Yet, when we

look at the requirements of 11 U.S.C. § 548 why should we be so surprised?

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

I suggest the reasons we find it so hard to accept the possibility that a foreclosure sale is a fraudulent conveyance are two-fold. First, we have been brought up and conditioned as a society to place banking institutions on something of a pedestal. Occupants of pedestals do not engage in activities described with such pejorative labels as fraudulent transactions. Second, a certain uneasiness is felt when we consider the effect such a logical analysis will have on our essentially credit economy. Unquestionably, the legal issues presented in this action raise the possibility, even probability, that a bank is placed in a difficult position any time it tries to exercise its right to realize on its security[3] over which it has freely bargained and paid good consideration. The inevitable question arises of how can a mortgagee preserve its time honored position. We'll come back to these economic and philosophical arguments but, for the moment, let us consider the three major legal arguments.

*The Cases*

The leading case holding a foreclosure sale in which substantially less than fair market value was received to be a fraudulent conveyance is *Durrett v. Washington*

---

**2.** As to the ineffectiveness of the argument of long usage, *see Northern Pipeline Const. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 2876 n. 31, 73 L.Ed.2d 598 (1982).

**3.** Of course, creditors may extend credit with full knowledge of the mortgage, but are in good faith concerned with the equity above the secured claim and in reliance on which they also gave good value.

*National Insurance Company,* 621 F.2d 201 (5th Cir.1980). *Durrett* involved an advertised foreclosure sale held nine days prior to the debtor filing a Chapter 11 petition. The property was sold for approximately 57.7% of its fair market value. The amount paid for the property was the exact amount due on the promissory note held by the insurance company.

*Durrett,* the debtor/plaintiff, claimed that the foreclosure was a fraudulent transfer for less than equivalent value as enumerated under § 67(d) of the Bankruptcy Act and, for our purposes, § 548(a)(2)(A) and (B)(i) of the Bankruptcy Code. Two questions were raised by this challenge: (1) When did the transfer of the property occur, and (2) Could the proceeds of the sale be accepted as fair consideration even though substantially less than the value of the property was received.

In deciding the first of the questions, the Fifth Circuit held that for purposes of the bankruptcy proceedings, the transfer occurred on the date of the foreclosure sale. The Court cited *Collier on Bankruptcy,* Section 1:30 at 130.28(2)(3) (14th ed. 1967) in support of its position. Although title in a Deed of Trust, the Texas equivalent of a mortgage, had been conveyed by *Durrett,* over seven-and-a-half years prior to the foreclosure sale, the debtor's right to possession of his interest in the property was not transferred until terminated by the sale.

The Court decided the second question by stating what has become for some the hard and fast rule that a fraudulent conveyance occurs if the price received at a foreclosure sale is less than 70% of valuation. As authority for this position, the Court cited *Schafer v. Hammond,* 456 F.2d 15 (10th Cir.1972) where it was held that approximately 50% of value received in a sale was insufficient consideration and, as a result, was void.

*In re Madrid,* 21 B.R. 424 (9th Cir.B.A.P. 1982) is the most prominent case upholding a publicly held foreclosure sale for less than the fair market value of the property sold. The Bankruptcy Appellate Panel reasoned that inadequacy of price alone is not sufficient to void a publicly held foreclosure sale. Rather, the price received should be presumed a fair return on the market value of the property. The dissent suggested that a case by case analysis of the circumstances surrounding each foreclosure sale should be made to determine if too low a price was received due to bad faith on the part of those promoting the sale.

The Ninth Circuit, *see* 725 F.2d 1197, (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), in its opinion on appeal from the Panel's decision refrained from addressing the issue of what constitutes an adequate price. Rather, the Court confined its analysis to a determination of whether the transfer had occurred within one-year preceding the debtor's bankruptcy filing. The Circuit Court determined that the transfer took place at the time the original mortgage deed was recorded, well beyond the one year period.[4]

Cases since, have struggled with the conflict between *Madrid's* holding and *Durrett's* analysis. *In re Smith,* 24 B.R. 19 (W.D.N.C.1982) (All factors must be considered); *In re Coleman,* 21 B.R. 832 (Bankr.S.D.Tex.1982) (28% of fair market value is less than equivalent value); *In re Richards,* 26 B.R. 560 (Bankr.D.R.I.1983) (All factors must be considered); *Matter of Berge,* 33 B.R. 642 (Bankr.W.D.Wisc.1983) (Adopted *Durrett* ); *In re Strauser,* 40 B.R. 868 (Bankr.N.D.Ohio 1984) (There is a presumption that the price received at a non-collusive, regularly conducted foreclosure sale is fair market value. The transfer occurs on the date the mortgage deed is recorded); *In re Hulm,* 738 F.2d 323 (8th Cir.1984) (Reasonably equivalent value must be determined on a case by case basis), *cert. den.* —— U.S. ——, 105 S.Ct.

---

**4.** The one year requirement of § 548 may really be irrelevant since, under § 544(b), the longer time limitations of state statutes could be used. However, the debtor is less likely to be insolvent at such an earlier date.

398, 83 L.Ed.2d 331 (1984), 12 B.C.D. 769 (Bankr.D.N.D.1984) (64% of market value is not reasonably equivalent value); *Abramson v. The Lakewood Bank and Trust Company,* 647 F.2d 547, (5th Cir.1981), *cert. den.,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982) (Transfer occurs on date when debtor loses right to possessory interest in property); *In the Matter of Myrtle T. Marshall,* 15 B.R. 738 (W.D.N.C.1981) (A foreclosure sale constitutes a "transfer" within the meaning of Section 548); *In re Alsop,* 22 B.R. 1017 (D.C.Alaska 1981) (Transfer occurs when the deed of trust is recorded, not at the time of the foreclosure sale); *In re Jones,* 20 B.R. 988 (Bankr.E.D. Pa.1982) (Fraudulent conveyance found. Price paid at foreclosure sale was one-third to one-half of property's fair market value. Reasonably equivalent value must be decided on a case by case basis); *In re Thompson,* 18 B.R. 67 (Bankr.E.D.Tenn.1982) (Adopted the 70% *Durrett* standard. Found that 80.8% of the property's fair market value was reasonably equivalent value); *In re Perdido Bay Country Club Estates, Inc.,* 23 B.R. 36 (Bankr.S.D.Fla. 1982) (Follows *Durrett* ); *In re Christian,* 48 B.R. 833 (D.C.1985) (A foreclosure sale is a transfer under Section 101(48) ); *In re Garrison,* 48 B.R. 837 (D.C.Colo.1985) (A foreclosure sale is a transfer under Section 101(48). Whether or not a foreclosure sale is a fraudulent conveyance must be decided on a case by case basis).

The debate was narrowed by Congress in its 1984 Amendments to the Bankruptcy Code. Intentionally or not, Congress settled the issue as to when a transfer occurs by including in its definition of transfer, "foreclosure of the debtor's equity of redemption", 11 U.S.C. 101(48). Transfer is now defined to include a foreclosure sale. As a result of this clarification, the circuit court's decision in *Madrid* is no longer

persuasive authority.[5] *In re Christian,* 48 B.R. at 834.

*Defining Reasonably Equivalent Value*

■ The question remains as to what constitutes reasonably equivalent value. The Bankruptcy Code does not define what is meant by this term. *In re Richardson,* 23 B.R. at 444; *In re Garrison,* 48 B.R. at 839. As indicated above, some courts have adopted the presumption of the Appellate Panel in *Madrid* that the price received at a regularly conducted, non-collusive foreclosure sale is fair market value. *In re Strauser,* 40 B.R. at 870. This Court declines to adopt this view for the two reasons stated in *In re Richardson,* 23 B.R. at 746:

First, as the dissenting opinion in *Madrid* emphasizes, fixing an irrebuttable presumption of reasonable equivalence for non-collusive, regularly condicted public sales proscribes the factual inquiry into "reasonable equivalence" which Section 548(a)(2) was designed to facilitate. The *Madrid* rule rigidly limits the evidence on reasonable equivalence to the price obtained in the market for distressed property being sold at foreclosure. *Durrett* and subsequent cases reflect that when no buyer appears at the sale, the lender normally sells to itself for the amount of its unpaid loan. When a buyer appears, it is usually seeking to pay as little as possible. The lender is usually eager to jettison the property for a price equalling its unpaid debt. Thus, in cases where another measure of value is available, the price obtained at foreclosure is weak evidence of value.

This Court also finds too rigid the 70% litmus test of *Durrett* and its progeny *In re Thompson,* 18 B.R. at 70; *In re Perdido*

---

5. There is no committee report explaining the language of amended section 101(48). Senators Dole and DeConcini, in published statements in the Congressional Record of October 5, 1984 at pages 13771–13772, state that Congress did not intend to take sides by adding the language to Section 101(48). These comments by the two senators are not appropriate authority for our

purposes. The Supreme Court has recently reemphasized its position that statements subsequent to enactments cannot be interpreted by the courts as expressing Congressional intent. *National Ass'n of Greeting Card Pub. v. U.S. Postal Service,* 462 U.S. 810, 103 S.Ct. 2717, 77 L.Ed.2d 195 (1983).

*Bay Country Club Estates, Inc.,* 23 B.R. at 39; and, *Matter of Berge,* 33 B.R. at 650. Rather, this Court finds the more appropriate inquiry to be a case by case analysis as originally suggested by the dissent in *In re Madrid,* 21 B.R. at 427, Judge Clark in *In re Richardson,* and, most recently, as stated in *In re Garrison,* 48 B.R. at 840.

> Reasonably, equivalence must depend on the facts of each case. Relevant considerations include the fair market value of the property at the time of the sale, the nature of the property in question and its relative marketability and the number of persons appearing and bidding at the foreclosure sale.

*Participants at foreclosure sales cannot expect a sale to be upheld simply because state procedures were followed.*

As a result, the problem from the mortgagee's perspective may be shrouded in some uncertainty. The ultimate answer lies with the state and federal legislatures. However, I would suggest that the answer requires more than simply upholding foreclosures as they are presently conducted under most state laws. Measures must be instituted to assure that foreclosure sales are held under conditions which have the most chance of producing a price that is close to fair market value. After all, the pervading intent not only behind the Bankruptcy Code, but a basic concept for all extendors of credit, is equitable distribution. To allow a poorly noticed sale to be upheld is a waste of the estate's assets and results in an unwarranted loss to creditors. The debtor is usually unconcerned, since he loses the property in any event, and any deficiency or remaining debts are probably discharged. So that, in the long run, it is the other creditors that will suffer from practices which tend to result in unrealized equity. *See Matter of Berge,* at 647, and *In re Richardson,* at 447.

A case by case approach is equitable as well as practical. The bankruptcy court should be satisfied so long as it is assured that all due effort was made to obtain a fair price for the property. The Appellate Panel in *Madrid* was clearly upset with the Texas practice of nailing the foreclosure notice to one of the court house doors. This was a half-hearted attempt at announcing the sale, since very few people use the court house doors as their daily source of news and, further, even those who might look were unlikely to get notice as the foreclosure notice could be detached almost immediately. This procedure presented little chance of producing an interested buyer, even a lesser chance of obtaining competitive bidding and a nominal chance of a sale price representative of fair market value.

Here in Massachusetts, the situation is only slightly better. Notice appears in the legal section of a local paper, frequently, with a limited circulation. These are appropriately referred to as tombstone notices. These types of notices are inadequate attempts at producing general interest in the sale and competitive bidders. According to our state court cases, mere discrepancy of price to value doesn't invalidate a sale. *Sher v. South Shore National Bank,* 360 Mass. 400, 274 N.E.2d 792 (1971); *Commonwealth v. Vaden,* 373 Mass. 397, 367 N.E.2d 621 (1977); *Sandler v. Silk,* 292 Mass. 493, 497, 198 N.E. 749, 751 (1935); *Seppala & Aho Construction Co. v. Peterson,* 373 Mass. 316, 367 N.E.2d 613 (1977). However, as this Court stated in *In re Guilford,* 52 B.R. 177 (Bankr.D. Mass.1985):

> A mortgagee, in exercising the power of sale in a mortgage, must *act in good faith and use reasonable diligence* to protect the interests of a mortgagor. *Seppala & Aho Construction Co. v. Petersen,* 373 Mass. 316, 367 N.E.2d 613 (1977); *Sher v. South Shore National Bank,* 360 Mass. 400, 401, 274 N.E.2d 792 (1971); *Milton Savings Bank v. U.S.,* 345 Mass. 302, 187 N.E.2d 379 (1962); *Richmond v. Stanzler,* 327 Mass. 62, 97 N.E.2d 200 (1957); *West Roxbury Co-op Bank v. Bowzer,* 324 Mass. 489, 492, 87 N.E.2d 113 (1949); *DesLauries v. Shea,* 300 Mass. 30, 34–36, 13 N.E.2d 932 (1938); *Chartrand v. Newton Trust Co.,* 296 Mass. 317, 320, 5 N.E.2d 421

(1936). As noted by the Court in *Sandler v. Silk*, 292 Mass. 493, 496–97, 198 N.E. 749 (1935):

It has become settled by repeated and unvarying decisions that a mortgagee in executing a power of sale contained in a mortgage is bound to exercise good faith and put forth reasonable diligence. Failure in these particulars will invalidate the sale even though there be literal compliance with the terms of the power. *Krassin v. Moskowitz*, 275 Mass. 80, 82 [175 N.E. 269], and cases cited. *Dexter v. Aronson*, 282 Mass. 124, 127 [184 N.E. 455]. *Boyajian v. Hart*, 284 Mass. 557, 558 [188 N.E. 260]. *Cambridge Savings Bank v. Cronin*, 289 Mass. 379, 382 [194 N.E. 289]. This duty and obligation as to good faith and reasonable care extends for the benefit and is available for the protection not only of the mortgagor but of those claiming in his right, including those holding junior encumbrances or liens. The mortgagee is a trustee for the benefit of all persons interested. *Bon v. Graves*, 216 Mass. 440, 446 [103 N.E. 1023]. *Winchester Rock & Brick Co. v. Murdough*, 233 Mass. 50, 54 [123 N.E. 344]. *Clapp v. Gardner*, 237 Mass. 187, 191 [130 N.E. 47]. *Brooks v. Bennett*, 277 Mass. 8, 16 [177 N.E. 685]. *Markey v. Langley*, 92 U.S. 142, 155 [2 Otto 142, 23 L.Ed. 701].

.    .    .    .    .

While the manner of conducting the sale is not disclosed in detail, it appears that no notice was given to the plaintiff although she had requested to be notified and had stated her intention to protect her interests by purchase. The trial judge rightly ruled that the plaintiff in the absence of special agreement was entitled as matter of law only to the usual published notice. *Johnston v. Cassidy*, 279 Mass. 593, 597 [181 N.E. 748]. Nevertheless the fact that in these circumstances no notice was sent to the plaintiff is evidence that good faith was not used to obtain the best reasonable possible price. *Drinan v. Nichols*, 115 Mass. 353, 357. *Clark v. Simmons*, 150 Mass. 357, 361 [23 N.E. 108]. *Bon v. Graves*, 216 Mass. 440, 446, 447 [103 N.E. 1023].

Under Massachusetts law, the mortgagee is to act as a reasonably prudent person would in selling his own property, *Kavolsky v. Kaufman*, 273 Mass. 418, 422, 173 N.E. 499 (1930); *Clark v. Simmons*, 150 Mass. 357, 360 (1890). It may be that inadequacy of price by itself is not sufficient evidence to upset a foreclosure sale. However, this factor coupled with other indications of lack of due diligence may mean that the mortgagee failed to meet the reasonably prudent person standard he is judged by. In making this determination, Courts have considered whether the deficiencies in the manner of handling the sale, caused less than fair market value to be received at the sale. *Chartrand v. Newton Trust Co.*, 296 Mass. at 321, 5 N.E.2d 421; *Way v. Dyer*, 176 Mass. 448 (1900) (Failure to advertise adjournments did not result in fewer people attending the sale or the property being sold for less than value). *Maryann Marcus v. John H. Collamore*, 168 Mass. 56, 46 N.E. 432 (1897) (Good faith effort found when sale was cancelled twice because no bidders were present, and was readvertised each time).

*Clark v. Simmons*, 150 Mass. 357, 23 N.E. 108 (1890), involved a situation where no bidders were present at the original time set and advertised for the auction and the sale was adjourned by public proclamation. The auction was held three months after the original date set with the only parties present—the auctioneer and an agent of the mortgagee. The property was sold for less than fair market value. The Court found a lack of good faith, invalidating the sale. While the Court stated that it would have found differently had the property been sold to a good faith stranger, that statement is both dicta and not helpful on the facts in our case.

■ Under the circumstances involved before this Court, the distinction of Mr.

McKearney's presence as a good faith stranger, makes very little difference. There were eight prospective bidders present at the original date set for sale which might well have resulted in competition for the purchase of the property. When the property was finally sold, only the auctioneer, a representative of the mortgagee, and Mr. McKearney were present. In order to purchase the property, Mr. McKearney had to outbid the mortgagee by only $400. Although Mr. McKearney was a good faith buyer, undoubtedly, the sale of this property was chilled by the three unadvertised continuances.

There is no statutory requirement for noticing continuances. While, frequently, this may be provided for under the terms of the mortgage agreement, no evidence was offered of a provision in the mortgage for notice by public proclamation or otherwise. This Court assumes it has become accepted practice in Massachusetts to include such a term in the mortgage and to make such public proclamation and not to provide new advertising or notice. This Court is unable to find statutory or case authority upholding this practice. However, even taking this into consideration, under the circumstances of this case, the mortgagee did not act as a reasonably prudent man would have in the sale of his own property. The mortgagee certainly did not act as . . . "a trustee for the benefit of all persons interested." (citations omitted) *Sandler v. Silk, supra.*

*The Procedure to be Followed*

■ Under the best of conditions, a foreclosure sale falls short of fitting the definition of fair market value, which requires a willing buyer and seller. A foreclosure sale is held under duress, when all other options are closed to the seller. This doesn't mean that it would be impossible to conduct a foreclosure sale in such a way that the price received was representative of value. The bankruptcy court would probably accept a sale that did not shock its conscience and was conducted in the same manner that a prudent man would advertise his own property for sale. Essentially, this means that the Court would have to be satisfied that the mortgagee had taken all reasonable steps not only to come out whole, but to realize a fair price as well. It is no answer to suggest that the mortgagor could protect himself by bidding if the price were too low. For if the debtor were in a position to bid, his property would not be under the hammer.

This Court will find a foreclosure sale acceptable only if there is a satisfactory effort to give notice to all interested or potentially interested parties. Notice is essential to procedural due process, U.S. Const. amend. XIV; *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *Memphis Light & Gas & Water Division v. Craft*, 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978). A foreclosure such as involved in this case, does not involve state action, *Flagg Bros. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) and, therefore, the requirements found within the 14th Amendment are not operative. Nonetheless, notice is a philosophical under pinning of American jurisprudence and, as such, should be a strong consideration in a foreclosure sale in which vital property interest, as well as the recovery to all remaining creditors, are so finally affected.

I would suggest the following as what might be the appropriate course. First, there should be an appraisal so that the parties can proceed knowing the market value of the property. They would have then a target in determining likely equity and the extent to which efforts to publicize the sale might be called for. There is unlikely to be a problem if the mortgage debt and value are in balance or substantially equal. On the other hand, there may be a substantial equity above the mortgage. I refrain from playing the numbers game by suggesting a percentage, that should be treated on a case by case basis. When in doubt, the safe course is to treat the equity as substantial.

How far below 100% of the value of the property transferred may the value given by the transferee fall and still be reasonably equivalent? Although *Durrett* has been so interpreted, *Durrett* does not hold that reasonably equivalent value must be 70 percent or more of fair market value. *Durrett* held that on the facts of this case, 57.7 percent of fair market value was not a fair equivalent. Naturally, reasonable equivalence will depend on the facts of each case. In some cases, no less than 100 percent of fair market value may be a reasonable price. In all cases, facts such as "the bargaining position of the parties ... and the marketability of the property transferred" will be relevant. Cook, *Fraudulent Transfer Liability Under the Bankruptcy Code*, 17 Hous.L.Rev. 263, 278 (1980).

*In re Richman*, 434 at 448.

Once it has been determined that there is a substantial value in the property above the outstanding debt on the mortgage, then the property should be advertised. This should include the legal notice presently required, as well as an advertisement in the real estate section of a paper of general circulation in the area of the property. This advertisement would preferably appear in the Sunday paper, generally assuring a greater circulation than some of the publications specializing in legal notices. In addition, notices should be mailed to the mortgagor, all lienholders, anyone who has expressed interest, and anyone whose name is submitted by the mortgagor and real estate brokers within a limited radius of the property. *See*, Berman & Fierberg, *Durrett, The Problem and Suggestions for its Solution*, Commercial Law Journal, p. 168, (April, 1985). Most important, new advertisements and written notice should be sent for each continuance. The mortgagor and anyone attending the first noticed sale who is willing to provide a name and address should be notified of each continuance.

*Conclusion*

These additional precautions and advertisements place a greater burden on the mortgagee than presumed to be presently required. However, in balancing the equities, it is a small price to pay to avoid the unfair results of the foreclosure sale involved in this case, where property worth $75,000 was sold for $40,400. If the requirements as outlined above are followed, it will not do violence to equity and fair play for the Court to find the sale price is, in fact, a reasonable equivalent. All parties will be assured that the results of the sale are final and can be relied upon. The traditional stability of the foreclosure sale will less likely be challenged or, if challenged, upset.

It should be noted at this time, that Mr. McKearney, the would be purchaser of the property, will not lose the investment he has made in the property. He will have a lien on the property equal to the monies he has put forward, 11 U.S.C. § 549(c).

This foreclosure sale conducted within a year of the petition while the debtor was insolvent, for less than reasonably equivalent value, is set aside as a fraudulent conveyance under 11 U.S.C. § 548(a)(2)(A) and (B)(i).

As soon as practical, the trustee is to arrange a sale of this property. It should be duly advertised, and all necessary steps should be taken to obtain a maximum recovery for the estate. In the interim, the trustee should continue to collect rent from the debtors. The debtors should not be enriched by their own questionable activity of listing the property at a value of $45,000 in the husband's original petition. This fostered part of the problem involved in this case by not indicating the true value of the property at the relief from stay hearing.